STANLEY CIECKA, PLAINTIFF-RESPONDENT, v. TRANSAMERICA INSURANCE GROUP, DEFENDANT-APPELLANT, AND HOME INDEMNITY INSURANCE COMPANY, DEFENDANT-RESPONDENT.

Argued November 14, 1978—Decided December 5, 1979.

422

*Mr. James A. Mullen, Jr.,* argued the cause for defendant-appellant, Transamerica Insurance Group (*Messrs. Montano, Summers, Mullen & Manuel,* attorneys, *Mr. Mullen,* of counsel).

*Mr. Peter P. Green* argued the cause for respondent, Home Indemnity Insurance Company (*Messrs. Green* and *Lundgren,* attorneys).

*Mr. Charles I. Tighe, III* argued the cause for plaintiff-respondent (*Messrs. Friedman* and *Tighe,* attorneys).

PER CURIAM.

In this declaratory judgment action plaintiff seeks a determination as to the applicability and effect of the uninsured motorist (UM) endorsements in automobile insurance policies issued by defendant insurance companies.

On August 7, 1972 plaintiff, Stanley Ciecka, was a passenger in an automobile owned and operated by one William Landolt when it collided with an automobile owned and operated by one Augustin Cardona. As a result of the collision plaintiff sustained personal injuries. Cardona was uninsured. Defendant-appellant, Transamerica Insurance Company, insured the Landolt vehicle for liability with a limit of $50,000 damages on account of bodily injury to one person. The same policy contained an uninsured motorist endorsement in standard form,[1] binding the insurer to

> pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage, caused by accident

---

[1] The UM endorsements to the policies in question follow the standard form developed by the insurance industry. See A. L. Widiss, *A Guide to Uninsured Motorist Coverage,* App.A. 291–98 (1969); Widiss, "Perspectives on Uninsured Motorist Coverage," 62 *Nw.U.L.Rev.* 497 (1967). This standard form was approved for use in New Jersey effective April 2, 1969. See *Obst v. State Farm Mutual Automobile Insurance Co.,* 123 *N.J.Super.* 60, 66 (Ch.Div.1973), aff'd o.b. 127 *N.J.Super.* 458 (App.Div.1974).

and arising out of the ownership, maintenance or use of such uninsured highway vehicle; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

In addition, plaintiff had a policy of insurance on his own automobile with defendant Home Indemnity Insurance Company (Home), which contained an uninsured motorist endorsement in the same form as Transamerica's.[2]

Ciecka instituted suit against both drivers. Transamerica interposed a defense for Landolt, and the Unsatisfied Claim and Judgment Fund answered for Cardona. Ciecka then negotiated a settlement with Transamerica for the available $50,000 policy limit on the bodily injury liability coverage. The parties filed a Stipulation of Dismissal and Transamerica paid the $50,000.

Plaintiff then made a demand under the UM endorsements of both policies, alleging damages on account of personal injuries in excess of $70,000 and seeking the maximum of $10,000 under

---

[2]Plaintiff qualifies as an "insured" under both policies, which define "persons insured" in the following manner:

Each of the following is an insured under this insurance to the extent set forth below:

(a) the named insured and any designated insured and, while residents of the same household, the spouse and relatives of either;

(b) any other person while occupying an insured highway vehicle; and

(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by an insured under (a) or (b) above.

The insurance applies separately with respect to each insured, except with respect to the limits of the company's liability.

Ciecka was an "insured" under the Transamerica UM endorsement in Landolt's policy by virtue of section (b) above. Under his own policy with Home, he was covered under section (a).

each UM endorsement.[3] The carriers resisted arbitration, taking the position that their UM coverages were beyond plaintiff's reach inasmuch as he had already been paid the full limit of Transamerica's liability coverage. Defendants relied on certain "exclusions" and "limits of liability" affecting UM coverage in their respective policies. Plaintiff then commenced the instant action for declaratory relief, in which the parties agreed that for purposes of this suit both drivers were negligent and plaintiff's injuries carried with them a value in excess of $50,000.

The trial court found in plaintiff's favor, determining that the UM coverage of both the host driver and the injured plaintiff were available, with Home's policy (plaintiff's) excess or secondary to the Transamerica policy (host driver's). On Transamerica's appeal the Appellate Division, in an unreported opinion, affirmed. We granted Transamerica's petition for certification, 77 *N.J.* 490 (1978), and now affirm.

The Appellate Division examined those provisions of the UM coverage of Transamerica's policy upon which the carrier relies, found them "at best ambiguous," and consequently construed them in favor of plaintiff, citing *Bryan Construction Co., Inc. v. Employers' Surplus Lines Insurance Co.,* 60 *N.J.* 375, 377 (1972). While Transamerica proffers a number of policy provisions in support of its position, its argument narrows down to the contention that by virtue of Section III (c)(1) of the UM endorsement it is entitled to offset against the UM coverage the $50,000 it paid to plaintiff under its bodily injury liability coverage. Section III (c)(1) reads as follows:

---

[3]At the time of the accident in this case *N.J.S.A.* 17:28–1.1, *L.*1968, *c.* 385, § 2, required an automobile insurer to *offer* uninsured motorists coverage with limits of $10,000 for each person and $20,000 for each accident. As amended by *L.*1972, *c.* 204, § 1, effective January 1, 1973, UM coverage became *mandatory* and the limits were raised to $15,000/$30,000.

III. LIMITS OF LIABILITY

Regardless of the number of Insureds under this insurance, the company's liability is limited as follows:

* * * * * * * *

(c) Any amount payable under the terms of this insurance because of bodily injury or property damage sustained in an accident by a person who is an insured shall be reduced by

(1) all sums paid on account of such bodily injury or property damage by or on behalf of

(i) the owner or operator of the uninsured highway vehicle and

(ii) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury or property damage, including all sums paid under the bodily injury or property damage liability coverage of the policy * * * .

Transamerica urges that because of the offset permitted by the literal language of this section, its $10,000 UM coverage is effectively cancelled out by the $50,000 payment to plaintiff under the bodily injury liability coverage—this because the policy states explicitly that any offset shall include "all sums paid under the bodily injury * * * coverage of the policy." In support of its position that the policy reflects an intent to create an intra-policy liability-UM offset, Transamerica points to Section III (d) of the UM endorsement, which creates the converse, or a UM-liability offset:

(d) Any payment made under this insurance to or for any insured shall be applied in reduction of the amount of damages which he may be entitled to recover from any person insured under the bodily injury property damage liability coverage of the policy.

In rejecting these contentions the Appellate Division ascribed critical significance to the carrier's use of the conjunctive "and" between subsections "i" and "ii" of Section III (c)(1) quoted above. It concluded that

a fair reading of Section III (c) suggests that the reduction applied only where payments have been made by or on behalf of (1) the owner or operator of the uninsured vehicle *and* (2) others jointly or severally liable. Thus it would appear

that the language relied on for exoneration by Transamerica would require payment by the uninsured tortfeasor as well as the insured vehicle before it becomes operative.

Having disposed of Transamerica's argument on the basis of a perceived ambiguity in the cited language, the court below went on to observe in passing that even "if the clauses were given the construction sought by Transamerica, they would be invalid", citing *Motor Club of America Insurance Co. v. Phillips,* 66 *N.J.* 277 (1974).

■ We need not reach the question of whether the clauses suffer from a fatal ambiguity, for we conclude that they are plainly invalid when read as intended by the carrier. While under that reading Section III (c)(1) would clearly effect a reduction in Transamerica's UM exposure, it would just as clearly disserve the purpose of a UM endorsement as expressed in *L.*1968, *c.* 385 § 2 (codified at *N.J.S.A.* 17:28–1.1) and as interpreted by our decision law. The statute recognizes no relationship whatsoever between liability coverage and uninsured motorists protection, other than the obvious requirement that a carrier issuing a policy with the former coverage must offer (as of the time the policies herein were issued, see *n.* 3, *supra*) the latter. The coverages are separate and distinct. Separate premiums are charged. Under the liability coverage of Transamerica's policy the company undertook generally to protect the named insured as owner of specified private passenger vehicles, permissive users thereof, and the named insured while operating other vehicles under certain circumstances. Under the UM coverage the company was obliged by the cited statute to insure against the liability of a complete stranger to the policy, a person not within the contemplation of any other category of liability insured, namely, "the operator or owner of an uninsured automobile, or hit and run automobile  *  *  * ."

Nothing in *N.J.S.A.* 17:28–1.1 authorizes or otherwise contemplates the offset claimed by Transamerica under Section III

(c)(1). While the legislative history may itself be unenlightening, we have recently had occasion to interpret the statute and announce certain principles which lead ineluctably to the conclusion that the reducing clause under scrutiny is plainly invalid.

In *Motor Club of America Insurance Co. v. Phillips, supra,* this Court annulled the "excess escape" clause in the "other insurance" paragraph of the standard UM endorsement as being repugnant to *L.*1968, *c.* 385 and invalid on the facts there presented. In so doing we discerned "no persuasive warrant, in construing a statute designed to provide protection by insurance for victims of uninsured motorists, to refuse to read the statute literally when such a reading will subserve the socially desirable policy of adequate indemnification of innocent automobile accident victims." 66 *N.J.* at 292. We likewise reaffirmed our commitment to a policy of liberally construing legislation involving automobile insurance to effect "the broadest protection of auto accident victims consistent with the language of the pertinent statute." *Id.* at 293. In applying that policy we concluded in *Phillips* that *N.J.S.A.* 17:28–1.1 "unambiguously grants the victim *prima facie* recourse to any and all policies applicable, subject to the unquestionably implicit condition that his claims in the aggregate not exceed his damages." *Id.* at 292. By the same token we here determine that the statute compels both Transamerica and Home to make available their UM coverage without any offset for payments heretofore made under Transamerica's liability coverage. *Cf. McGhee v. Charley's Other Brother,* 161 *N.J.Super.* 551 (Law Div.1978) (holding invalid a provision in host vehicle's policy providing for offset of UM payments previously made to injured passenger against liability payments). We see every reason in public policy for giving it this reading and no persuasive reason for not doing so.

That leaves the question of which UM coverage is primary— Transamerica's or Home's. The "excess" or "other insurance" clause in each policy reads in pertinent part as follows:

With respect to bodily injury to an insured while occupying a highway vehicle not owned by the named insured, this insurance shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such vehicle as primary insurance * * *.

By the terms of this clause the primary coverage is with the host vehicle's carrier, Transamerica, inasmuch as plaintiff (an insured) was an occupant of a vehicle *owned* by the named insured (Landolt). The Appellate Division observed that the clause in question affects only the risk distribution between the two carriers rather than the extent of coverage available to plaintiff. Accordingly, it concluded that the contract language could apply in this case to make Transamerica's UM coverage primary, there being no public policy consideration which would operate to invalidate the clause.

In the posture of this case we are content to leave intact the determination of the court below in this regard, without suggesting a definitive ruling on the point. The question of which coverage is primary was not raised in the petition for certification and was dealt with by counsel, both in the briefs below and at oral argument before us, in only cursory fashion.

Affirmed.

*For affirmance*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—7.

*For reversal*—None.