DORIS LUNDY, PLAINTIFF-APPELLANT, v. AETNA CASUALTY
AND SURETY COMPANY, DEFENDANT-RESPONDENT.

PHYLLIS ISOM, PLAINTIFF-APPELLANT, v. ALLSTATE
INSURANCE COMPANY, DEFENDANT-RESPONDENT.

Argued October 26, 1982—Decided March 7, 1983.

*Dennis M. Donnelly* argued the cause for appellants (*Blume, Weiseman & Vazquez,* attorneys).

*Donald D. Davidson,* argued the cause for respondent, Aetna Casualty and Surety Company (*Hoagland, Longo, Oropollo & Moran,* attorneys).

*John L. McDermott* argued the cause for respondent, Allstate Insurance Company (*McDermott, McGee & Ruprecht,* attorneys).

The opinion of the Court was delivered by

SCHREIBER, J.

These two cases, involving substantially similar factual patterns, raise the question of the extent of uninsured motorist coverages under a single automobile liability policy covering three automobiles.

## The Isom Claim

Harvey Washington purchased an automobile liability policy from Allstate Insurance Company (Allstate) in September 1976. The policy insured three automobiles, a 1966 Chrysler, a 1964 Pontiac, and a 1966 Pontiac. Plaintiff Phyllis Isom, an additional insured under the Allstate policy, was a passenger in an automobile that collided with an uninsured car. Accordingly, she was entitled to the benefit of the uninsured motorist provision in the Allstate policy. The face sheet of the policy referred to the three insured vehicles and indicated that each was covered by the uninsured motorists provision in the amount of $15,000

per person. The plaintiff sought recovery of $45,000. Allstate asserted that its policy limited recovery to $15,000.

The disputed claim was submitted to arbitration in accordance with the policy's provisions. The arbitrator awarded the plaintiff $45,000. The trial court, granting defendant's motion for summary judgment and denying plaintiff's motion for summary judgment, limited the award to $15,000. The Appellate Division affirmed. We granted plaintiff's petition for certification. 91 *N.J.* 207 (1982).

There are two aspects to this claim. One involves the statutory requirements governing uninsured motorist coverage. These must be embodied in the insurance policy and cannot be contracted away. Even if the statutory requisites are not set forth, they are deemed to have been included in the policy. Nor may policy provisions conflict with those statutory requirements. The second aspect concerns provisions of the insurance policy. In this respect the focus of attention is the coverage that the policy affords, irrespective of the statutory minima.

Each automobile must be insured, *N.J.S.A.* 39:6A–3, and "[e]very *motor vehicle* registered or principally garaged in New Jersey must be insured with Uninsured Motorist Coverage on and after January 1, 1973." M. Iavicoli, *No Fault & Comparative Negligence in New Jersey* 100 (1973) (emphasis in original); *N.J.S.A.* 39:6A–14. Thus, not only must every automobile policy have uninsured motorist coverage, *N.J.S.A.* 17:28–1.1, but also every automobile covered under that policy must have the statutorily required uninsured motorist coverage.

Neither party questions that under *N.J.S.A.* 17:28–1.1 automobile liability policies must include a provision that the insured or his legal representative shall be entitled to recover damages sustained in an accident with an uninsured automobile if the owner or operator of the uninsured automobile is legally responsible. This liability exists irrespective of whether the insured vehicle was involved in the accident. This interpretation of the statute has been adopted by this Court in *Motor Club*

of *America Insurance Co. v. Phillips,* 66 *N.J.* 277 (1974),[1] *Beek v. Ohio Casualty Insurance Co.,* 73 *N.J.* 185 (1977), and *Ciecka v. Transamerica Insurance Group,* 81 *N.J.* 421 (1979). *N.J.S.A.* 17:28–1.1 reads as follows:

> No automobile liability policy or renewal of such policy, of insurance insuring against loss resulting from liability imposed by law for bodily injury or death, sustained by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued in this State with respect to any motor vehicle registered or principally garaged in this State unless it includes coverage, in limits for bodily injury or death as follows:
>
> > a. an amount or limit of $15,000.00, exclusive of interest and costs, on account of injury to, or death of, one person, in any one accident, and
> >
> > b. an amount or limit, subject to such limit for any one person so injured or killed, of $30,000.00, exclusive of interest and costs, on account of injury to or death of more than one person, in any one accident,
>
> under provisions approved by the Commissioner of Insurance, for payment of all or part of the sums which the insured or his legal representative shall be legally entitled to recover as damages from the operator or owner of an uninsured automobile, or hit and run automobile as defined in section 18 of chapter 174 of the laws of 1952 (C. 39:6–78), because of bodily injury, sickness or disease, including death resulting therefrom, sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured or hit and run automobile anywhere within the United States or Canada. All such automobile liability policies shall also include coverage for the payment of all or part of the sums which persons insured thereunder shall be legally entitled to recover as damages from owners or operators of uninsured automobiles, other than hit and run automobiles, because of injury to or destruction to the personal property of such insured with a limit in the aggregate for all insureds involved in any one accident of $5,000.00, and subject, for each insured, to an exclusion of the first $100.00 of such damages.

■ Justice Handler pointed out in *Fernandez v. Selected Risks Insurance Co.,* 82 *N.J.* 236, 241 (1980), that:

> [t]he statute contains no language requiring ... that the insured have any special relationship with the vehicle that he is operating or in which he is a passenger. All that *N.J.S.A.* 17:28–1.1 demands is that the insured demonstrate that he has sustained injuries which were caused by an uninsured automobile.

An automobile liability policy must provide not only coverage for liability related to the insured vehicle, but also coverage to

---

[1]Though the precise issue in *Motor Club* dealt with the "other insurance" clause, the basic concept involved was not so limited. *See Fernandez v. Selected Risks Insurance Co.,* 82 *N.J.* 236, 241 (1980).

the insured for injuries caused by an uninsured automobile. As one commentator has observed: "unlike liability insurance, uninsured motorists' coverage is not linked to accidents that occur while the insured is operating or occupying a specified vehicle." 2 I. Schermer, *Automobile Liability Insurance* § 31.02, at 31–8 (2d ed. 1981).

This statute has two purposes: to relieve the financial burden on the Unsatisfied Claim and Judgment Fund and to protect insured motorists from uninsured financially irresponsible drivers. This statutory protection may also be extended to persons other than the named insured when the insuring company has contractually extended the coverage in the policy. *Fernandez v. Selected Risks Insurance Co.*, 82 *N.J.* at 240. Such extensions further the statutory purpose of protecting persons injured by uninsured cars.

No reduction in the amounts mandated by the statute is legally possible. Thus, there must be protection up to $15,000 on account of injury to or death of any one person and $30,000 on account of injury to or death of more than one person in any one accident. For example, if a person has two automobiles insured under separate policies, each policy must have the accident liability feature providing protection for injuries due to the negligence of an uninsured motorist. Thus, in *Beek v. Ohio Casualty Insurance Co., supra,* the Ohio Casualty Insurance Company, which had issued a policy on an automobile of the plaintiff, was compelled to pay him under its uninsured motorist coverage, even though the plaintiff had collected under another insurance policy with the same coverage covering his motorcycle that had been involved in an accident with an uninsured motorist. *See also State Farm Mutual Automobile Liability Insurance Co. v. Kiser,* 168 *N.J.Super.* 230, 237 (App.Div.), certif. denied, 81 *N.J.* 348 (1979) (holding stacking proper where insurance company issued two policies to same insured); *General Accident Group v. Shimp,* 147 *N.J.Super.* 404, 412–14 (Law Div.1977) (same); Comment, "Intra-Policy Stacking of Uninsured Motorist and

Medical Payments Coverages: To Be or Not To Be," 22 *S.D.L. Rev.* 349, 350 (1977) (noting a majority of states have held "other insurance" clauses invalid and required inter-policy stacking). Recovery, of course, is limited to damages suffered and there cannot be double recovery. *Motor Club of America v. Phillips*, 66 *N.J.* at 292.

■ The defendant Allstate does not quarrel with the principles expressed in *Motor Club, Beek* and *Fernandez* and concedes that if its insured, Washington, had received three policies from Allstate, one for each car, then the plaintiff would have been entitled to stack his coverage of $15,000 under each policy, for a total of $45,000.[2] In other words, if Allstate had delivered to Washington three copies of the identical eleven-page Allstate Family Automobile Policy with three separate declaration sheets, each referring to one of the three vehicles, Allstate's exposure for uninsured motorists coverage would be $45,000.

We have previously observed that each automobile must have an insurance policy and that each policy must include uninsured

---

[2]The defendant in its brief before us quotes at length from 8C Appleman, *Insurance Law and Practice* § 5101, at 444, 449–51 (1981), where the authors criticize stacking and argue that the courts are confused because they believe the insurer is receiving a windfall because it is charging "a separate premium for each coverage as it applies to a separate automobile." While the basis of this criticism is unfounded, it is *not* the reason for our result. Rather, we rely on the rationale of *Motor Club* predicated on *N.J.S.A.* 17:28–1.1, which provides for uninsured motorist coverage separate and apart from the automobile insured under the policy.

Appleman also uses the somewhat farfetched example where a policy is issued to one owner for a fleet of 1,000 cars with uninsured motorist coverage of $50,000 for each vehicle, or an exposure of 50 million dollars. This example impliedly assumes that the company was compelled to sell the policy. The assumption is incorrect since the insurance company willingly accepted this exposure. Moreover, presumably the company would fix its rates to cover such an exposure, one which contemplates that a person's claim for injuries could be reasonably valued at 50 million dollars. Furthermore, under the established interpretation of *N.J.S.A.* 17:28–1.1, with which the dissent does not quarrel, if the insurance company had issued 1,000 policies, each covering a different vehicle, stacking would be in order.

motorist coverage. Allstate has not advanced any persuasive reason why it should make any difference from a statutory standpoint if there is one set of papers for three cars in which separate uninsured motorist insurance coverage is provided for each vehicle or three identical sets of papers for three cars. The fact that administratively an insurance company lumps two or more cars in one insurance contract, which provides individualized insurance coverage, does not mean that only a single "policy" has been issued for statutory purposes. So understood, Allstate's position conflicts with the statutory mandate and with the statutory purpose favoring protection for those injured by uninsureds.

Allstate relies on *Allstate Ins. Co. v. McHugh*, 124 *N.J.Super.* 105 (Ch.Div.1973), aff'd o.b., 126 *N.J.Super.* 458 (App.Div.), certif. denied, 65 *N.J.* 288 (1974). *McHugh* dealt with an insurance policy with two face sheets, each covering a separate car. The trial court rejected the notion that there were functionally two policies and refused to stack uninsured motorist coverage. It did recognize the substantial split among the states on this issue.[3] The logic of *McHugh* was implicitly rejected by *Motor Club* and its progeny. We now expressly reject *McHugh*.

In view of our holding it is unnecessary to consider what coverage is afforded by the policy. Nevertheless, we note in passing that Allstate's policy is not inconsistent with the statutory requirement for uninsured motorist coverage. The Allstate policy treats the three vehicles independently. The nature of the coverage for each car is set apart. See Appendix. Each car is identified, for example, as having bodily injury liability of $15,000 each person and $30,000 each accident. The $2.00 premiums due with respect to each car for uninsured motorist coverage are set forth individually. As we have seen, the uninsured

---

[3] A recent count indicated fourteen states enforced anti-stacking provisions and twenty-two states treated each coverage afforded as tantamount to a separate policy. 2 I. Schermer, *Automobile Liability Insurance* § 31.02, at 31–3 to 31–7 (2d ed. 1981).

motorist coverage is not linked to the insured's car. Since a single premium on one car would give him $15,000 coverage, what coverage was intended by payment of equal premiums for the second and third cars? The insured has the right to receive actual damages under multiple ownership coverages for which premiums have been paid. *See, e.g., American States Insurance Co. v. Milton,* 89 *Wash.*2d 501, 573 *P.*2d 367 (Wash.1978) (holding that one policy covering nine vehicles, separate premiums having been paid for uninsured motorist coverage of $15,000 per individual, entitled an insured to coverage of $135,000). Allstate contends that the premium for each automobile is less when only one set of papers is used to provide insurance coverage for three cars. Its counsel explained on oral argument that this reduction is due to lower administrative costs and not to reduced exposure. Three separate premiums were charged for uninsured motorist coverage for the three vehicles.

■ Furthermore, the policy itself is unclear with respect to the extent of uninsured motorist coverage. Part IV of the policy relates to uninsured motorist coverage. Pertinent sections of Part IV read as follows:

> The insurance afforded under Part IV applies separately to each insured, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.
>
> . . . .
>
> *Limits of Liability*
>
> The limit of liability for Uninsured Motorists Coverage stated in the declarations as applicable to "each person" is the limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the declarations as applicable to "each accident" is the total limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident.

This language indicates that the stated limits represent the total amount available for recovery; that is, stacking is not permitted.

Immediately following Part IV is a section entitled Conditions. Among other things, this section contains the following provision:

*Two or More Automobiles*

Parts I, II and III: When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each, but an automobile and a trailer attached thereto shall be held to be one automobile as respects limits of liability under Part I of this policy, and separate automobiles under Part III of this policy, including any deductible provisions applicable thereto.

This section by its terms does not apply to Part IV, the uninsured motorist provision. Insofar as Parts I, II and III are concerned, when two or more automobiles are insured, the policy terms apply separately to each. The purpose of this provision is to prevent accumulation of the provisions governing each vehicle. Therefore, a $100 property deductible for collision on each listed car could not be accumulated and applied to a single car. The Allstate policy in question had a deductible of $100 with respect to property damage for each car. This condition prevents stacking of the $100 deductible. Similarly, the amount of general liability coverage for each car could not be stacked. As noted above the condition that prevents stacking in Parts I, II and III was not made applicable to Part IV, the uninsured motorist provision. The implication is that stacking was contemplated for uninsured motorist coverage.

Where the policy language supports two meanings, one favorable to the insurer and the other to the insured, the interpretation favoring coverage should be applied. *Butler v. Bonner & Barnewall, Inc.,* 56 *N.J.* 567, 576 (1970). Traditional rules of construction of insurance policies favor a reading advantageous to the insured. Ambiguities are to be resolved against the insurance company which drafted the printed form contract, the policy being "unipartite in nature." *Bowler v. Fidelity & Casualty Co.,* 53 *N.J.* 313, 326 (1969). Application of these principles would lead to the conclusion that the plaintiff was entitled to the benefit of stacking. Such a result furthers the beneficient policy of compensating insureds for damages suffered at the hands of uninsured motorists.

■ In summary, it is our opinion that *N.J.S.A.* 17:28–1.1, as interpreted in *Motor Club, Beek* and *Fernandez,* mandates that defendant Allstate's policy be treated the same as three separate policies, one for each car. We see no reason to differentiate between three separate documents and one document covering three vehicles. This proposition accords with the underlying policy of *N.J.S.A.* 17:28–1.1, requiring each automobile policy for any one vehicle to protect the insured for injuries arising out of an automobile accident with an uninsured motorist, irrespective of whether the insured's automobile is involved. Moreover, the policy provisions also support a finding supportive of stacking due to the conflicting language of the policy and the provision charging independent premiums for that coverage for each vehicle.

The judgment of the Appellate Division is reversed and the cause is remanded to the trial court to enter judgment in favor of the plaintiff.

## The Lundy Claim

Doris Lundy was injured in an automobile accident with an uninsured motorist on October 29, 1977 while she was a passenger in a 1973 Plymouth. Her husband, Peter, owned the automobile and was the operator of the car at the time of the accident. The automobile was insured by Aetna Casualty and Surety Co. (Aetna) under a policy dated January 14, 1977. That policy also covered two other vehicles owned by Mr. Lundy, a 1972 Chevrolet Van and a 1972 Volkswagen.

The Lundy policy was never produced as evidence, although the declaration sheet was attached to the plaintiff's complaint. The face sheet reveals that all three vehicles had uninsured motorist coverage. Neither the limit of liability nor the premium charged for uninsured motorist coverage is disclosed on the declaration sheet. Apparently the uninsured motorist coverage

is included in the bodily injury coverage.[4] The limits of liability for bodily injury were $15,000 each person, $30,000 each occurrence.

Mrs. Lundy submitted her claim to an arbitrator apparently in accordance with the policy provisions. The arbitrator awarded $22,500 representing the full value of Mrs. Lundy's damages under the uninsured motorist coverage. However, the arbitrator made "no decision with respect to the amount of coverage." Aetna offered to pay only $15,000. Mrs. Lundy filed suit to confirm the award of $22,500 and to compel Aetna to pay the additional $7,500. On defendant's motion for summary judgment the trial court vacated that part of the award in excess of $15,000. The Appellate Division affirmed. We granted certification. 91 *N.J.* 207 (1982).

The principles expressed in the *Isom* matter are equally applicable to this case. The judgment is reversed and the cause remanded to the trial court for further proceedings consistent with this opinion.

---

[4]In the space designated for the amount of the premium for uninsured motorist coverage, the letters "INBI" appear. Aetna's counsel explained during oral argument that these letters indicated that the uninsured motorist premium was contained in the bodily injury premium.

562

## APPENDIX

### ISOM INSURANCE POLICY

DECLARATIONS

ALLSTATE INSURANCE COMPANY
ISSUED SEP 21, 1976
Policy Number 0 09 920765 09/03

2. Name HARVEY WASHINGTON
3. Address 167 JAMES ST
 NEWARK NJ 07103

SUPPLEMENT PAGE 1
POLICY PERIOD

THE POLICY PERIOD SHALL
BE AS STATED BELOW.
FROM- SEP 3, 1976
TO- SEP 3, 1977

12:01 A.M. Standard Time
(See reverse side for additional Policy Provisions.)

4. The insurance afforded, including that with respect to each described vehicle, is only for each such coverage, including the limit applicable thereto, as is set forth below, subject, however, to all the applicable provisions of the policy. (If the word "amended", followed by a date, appears above, the insurance applies only prospectively from such date.)

| DESCRIPTION AND NUMBER OF INSURED VEHICLE | | | LIENHOLDER NAMED IN LOSS PAYABLE CLAUSE ENDORSEMENT. |
|---|---|---|---|
| VEHICLE | YEAR | NAME AND SERIAL NUMBER | |
| NO. 1 | 66 | CHRYSLER LL2172026 | |
| NO. 2 | 64 | PONTIAC 834L92049 | |
| NO. 3 | 66 | PONT 233076G606224 | |

| | | | COVERAGES AND LIMITS OF LIABILITY |
|---|---|---|---|
| X | X | X | AA BODILY INJURY LIABILITY $15,000 EACH PERSON — $30,000 EACH ACCIDENT |
| X | X | X | BB PROPERTY DAMAGE LIABILITY $5,000 EACH OCCURRENCE |
| X | X | X | VA BASIC PERSONAL INJURY PROTECTION INCOME CONTINUATION BENEFIT $100 PER WEEK AND $5200 TOTAL EACH PERSON |
| X | X | X | ESSENTIAL SERVICES BENEFIT $12 PER DAY AND $4380 TOTAL EACH PERSON |
| X | X | X | MEDICAL EXPENSE EXTENSION $1,000 PER PERSON |
| X | X | X | SS UNINSURED MOTORISTS BODILY INJURY $15,000 EACH PERSON — $30,000 EACH ACCIDENT |
| X | X | X | PROPERTY DAMAGE $5,000 EACH ACCIDENT |
| X | X | X | LESS DEDUCTIBLE OF $100 EACH ACCIDENT |

ALLSTATE INS ANCE COMPANY
ISSUED SEP 21, 1976 ..ated below.

Policy number 0 09 920765 09/03 From· SEP 3, 1976 12:01 A.M.
 Standard
 Time

Issued to PRODUCER OF RECORD To· SEP 3, 1977
 J NICHOLAS MILANO INSURED
 15 PARK AVE HARVEY WASHINGTON
 NEWARK NJ 07104 147 JAMES ST
 NEWARK NJ 07103

| COVERAGES, PREMIUMS AND OTHER POLICY INFORMATION | | | |
|---|---|---|---|
| COVERAGE DESCRIPTION | 66-CHRYS | 64-PONTI | 66-PONT |
| AA BODILY INJURY LIAB. | $88.00 | $93.00 | $93.00 |
| BB PROPERTY DAMAGE LIAB. | $69.00 | $72.00 | $72.00 |
| VA BASIC PERSONAL INJURY | $41.00 | $43.00 | $43.00 |
| SS UNINSURED MOTORISTS | $2.00 | $2.00 | $2.00 |
| TOTAL PREMIUM BY VEHICLE | $200.00 | $210.00 | $210.00 |
| POINT SURCHARGE PERCENT | | | |
| LIABILITY | NONE | NONE | NONE |
| A.I.P. SUPPLEMENT | II | II | II |
| A.I.P. CLASS | 4AS | 4A | 4A |
| A.I.P. TERRITORY | 03 | 03 | 02 |
| MULTIPLE CAR DISCOUNT | YES | YES | YES |

TOTAL PREM INCL $4.65 GUARANTY UNDERWRITING FUNDS SURCHARG
 TOTAL PREMIUM $624.65
 DEPOSIT PREMIUM $140.

PLEASE SEE THE ATTACHED PAYMENT NOTICE. IF AN AMOUNT
IS DUE, MAKE PAYMENT OF THE PREMIUM TO YOUR PRODUCER
OR DIRECTLY TO ALLSTATE ON OR BEFORE THE DUE DATE

Payment Record

Date Paid _____

Amount Paid _____

Check Number _____

Office use only

# Payment Notice

Please tear along this line
Return bottom portion with your payment

Policy number Date due

0 09 930765 09/03 OCT 21, 1976

CLIFFORD, J., dissenting.

The Court concludes that the uninsured motorist statute, *N.J.S.A.* 17:28–1.1, and the provisions of the Allstate insurance policy in question compel intra-policy "stacking" or "pyramiding" of uninsured motorist (UM) coverage. What this means is that those who fall within the definition of an "insured" under a single automobile liability policy covering several vehicles—three, in each of these cases—can recover under the UM coverage of *each* car and thereby multiply the limits of liability for the UM coverage by the number of automobiles designated in the policy.

Here is where that result takes us:

> Let us take, as a starting point, a fleet, or several vehicles, policy issued to a single insured. If we desire to carry this to a point of absurdity, let us say that the policyholder is a city, owning a thousand automobiles, with an uninsured motorist coverage of $50,000. If we said that the risk, in any one collision, then would be the cumulative total, or stacked coverage, in any one incident the company's exposure would be 50 million dollars as to each vehicle—an absurdity, which no company could possibly afford to insure. [Appelman, 8C *Insurance Law and Practice,* § 5101 at 44 (footnote omitted).] [1]

Because any reading of the statute and the insurance policy that yields such a result does not make much sense to me, I view it with a suspicion that has ripened into full-blown disagreement with the Court, wherefore I dissent.

## I

It is my view that *Allstate Ins. Co. v. McHugh,* 124 *N.J.Super.* 105 (Ch.Div.1973), aff'd, 126 *N.J.Super.* 458 (App.Div.), certif. den., 65 *N.J.* 288 (1974), is correct in its holding, on the same issue as is presented by this case, that intra-policy stacking is not required by statute and is not permitted under Allstate's policy. In *McHugh,* Judge Bischoff ruled in his Chancery Divi-

---

[1] A "far-fetched" example, says the majority, *ante* at 556 n. 2. Of course it is. That is why Appelman characterizes it as an "absurdity." And that is precisely what is produced by the Court's reading of the statute and policy in question.

sion opinion, relied on by the Appellate Division, that the limits of liability under the UM coverage of McHugh's automobile insurance policy were unambiguous and that the separate premium payments for each automobile represented consideration for the additional risk incurred in the coverage of two cars. In *Motor Club of America Ins. Co. v. Phillips*, 66 *N.J.* 277 (1974), upon which the majority places heavy reliance, the Court, far from rejecting *McHugh's* logic, took pains to point out that the issue in *McHugh* did "not concern us here", and we implied "no view on the results there adjudicated." 66 *N.J.* at 282–83.

Today's meticulous opinion points out that previous decisions of this Court on the stacking of UM coverage have held the challenged provisions of the insurance policies in those cases to be violative of the requirement of the uninsured motorist statute that every automobile liability policy contain UM coverage up to a designated minimum. The provisions examined in those cases sought to exclude coverage when other insurance was available. *Motor Club of America Ins. Co. v. Phillips*, 66 *N.J.* 277 (1974), concerned an "excess-escape" clause in Phillips' policy that excluded UM coverage if recovery was available from the host car's policy. *Beek v. Ohio Cas. Ins. Co.*, 73 *N.J.* 185 (1977), dealt with inter-policy stacking of the UM coverage in two separate policies of insurance owned by plaintiff. *Ciecka v. Transamerica Ins. Group*, 81 *N.J.* 421 (1979), probed the relationship between the UM and bodily injury liability coverages contained in one policy. In each instance the Court held that provisions within those insurance policies that undertook to exclude UM coverage because plaintiffs had access to other insurance were repugnant to the statutory requirement that every automobile insurance policy have UM coverage in prescribed amounts. I voted with the unanimous Court in each of the cases cited above, and continue to view them—as apparently does the rest of the Court—as having been correctly decided.

But *Motor Club, Beek,* and *Ciecka* were directed toward a different statutory concern—the mandate that *every* policy provide UM coverage within stated minimum limits. There is

simply no question that the policy before us satisfies that requirement. However, whether the statute be read "literally," a la *Motor Club*, 66 *N.J.* at 292, or imaginatively, indulgently, even poetically, one cannot find within its four corners or its penumbra any suggestion that a single policy fixing a single limit of liability for UM coverage must be read to require multiplication of the amount of that coverage by the number of vehicles included on that single policy. The cases before us do not raise any issue of "exclusion" or "excess-escape" outlawed by the statute. As I understand today's issue it boils down to a question of contract interpretation, not statutory interpretation: do the policies in these two cases provide only for the statutory minimum UM coverage or for some multiple thereof?

## II

The Allstate policy, which remarkably is the only one before us, could scarcely be more precise in its anti-stacking provision. The policy's declarations sheet limits liability under the UM coverage to $15,000 for each person. Part IV of the policy nails this down in its specification that the "limits of liability for Uninsured Motorists Coverage stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages * * * because of bodily injury sustained by one person as the result of any one accident * * *." What can that mean except that $15,000 is the total amount available to one person for recovery under UM coverage?

But, says the Court, this is all rendered ambiguous when one goes to the "Conditions" section of the policy, which contains a provision under "Two or More Automobiles." It is there stated that "stacking" will *not* be permitted for the types of coverage specified in that provision. See *ante* at 559. Inasmuch as UM coverage is not included in the list of coverages for which "stacking" is not allowed, the majority reads this to mean that the converse must be true for Section IV—that "stacking" *is* permitted under UM coverage.

That contention is off the mark. Section IV, as I have sought to demonstrate, addresses the "stacking" problem in an unmistakable, straightforward fashion. It is *not* permitted under UM coverage. Because of the unique nature of UM coverage, the limit of liability declared in Section IV is not rendered a nullity or transformed into an ambiguity under the "Conditions" section. UM coverage applies to "each accident," as the Court has taken pains to emphasize, see *ante* at 554–555, rather than to "each automobile." Therefore, the "stacking" provision prefaced by the heading "Two or More Automobiles" simply has nothing to do with UM coverage. It is entirely irrelevant. The ambiguity that the majority resolves against the insurer does not exist.

In *Isom* I would affirm. In *Lundy* I would reverse and remand only because the policy is not in evidence and for all we know it may be its terms permit "stacking" of UM coverage. If Aetna's policy reads the same as Allstate's, then of course the same result should follow.

Justice POLLOCK authorizes me to record his concurrence in this dissenting opinion.

*For reversal and remandment*—Chief Justice WILENTZ and Justices SCHREIBER, HANDLER and O'HERN—4.

*Dissenting*—Justices CLIFFORD and POLLOCK—2.