**GUARANTEE INSURANCE COMPANY**

v.

**John ANDERSON.**

**Civ. A. No. 82–5122.**

United States District Court,
E.D. Pennsylvania.

April 26, 1984.

---

Charles T. Roessing, Philadelphia, Pa., for plaintiff.

David F. Binder, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

KATZ, District Judge.

The issue presented by the parties' cross-motions for summary judgment in this declaratory judgment action is whether Anderson is entitled to recover under the uninsured motorist coverage provided by Guarantee Insurance Company ("Guarantee") to

National Freight, Inc.,[1] and if so, whether he may cumulate, or "stack," such coverage.

On the night of January 26, 1981 Anderson was driving his own tractor, attached to a trailer owned by National Freight, hauling a load of cheese on Interstate Highway 95 near Greenwich, Connecticut. He pulled off the road onto the shoulder and got out of the tractor to determine what was causing the truck to emit black smoke. As he stood next to the left front wheel of the tractor with a flashlight, he was struck by a hit-and-run driver and suffered serious personal injuries. (Anderson deposition, pp. 48–50, 63–67.)

At the time of the accident, National Freight owned a policy issued by Guarantee, providing for uninsured motorist coverage. The policy covers National Freight's fleet of vehicles. That policy contains a stated limit of liability of $100,000 for bodily injury for each person, of which National Freight is responsible for the first $50,000 under its self-insured retention. Anderson's claim for his injuries exceeds that amount. In its motion for summary judgment, Guarantee asks the Court to declare that its liability to Anderson is limited to $100,000. Anderson's cross-motion asks the Court to permit him to stack the policy limits according to the number of vehicles in the fleet insured by this policy.

New Jersey law governs this insurance contract. *See Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). National Freight has its principal place of business in New Jersey, and the policy was written by a New Jersey authorized representative. The uninsured motorist provision refers to New Jersey. Anderson is receiving workers' compensation benefits under the applicable New Jersey statute. Contact points in New Jersey, therefore, have the most significant relationship to this litigation. *CBS, Inc. v. Film Corp. of America*, 545 F.Supp. 1382, 1385–87 (E.D. Pa.1982).

Guarantee first argues that Anderson is not entitled to coverage at all because the National Freight trailer was not a vehicle covered by the policy. This contention is contrary to the unambiguous language of the policy endorsement for uninsured motorist coverage, which describes "insured highway vehicles" as "any auto." While "auto" is not defined, the definition of "highway vehicle" explicitly includes a "trailer." Any conflict with the general insurance Schedule of Coverages and Covered Autos must be resolved against the insurer, in Anderson's favor. *Butler v. Bonner & Barnewall, Inc.*, 56 N.J. 567, 576, 267 A.2d 527 (1970); *Lundy v. Aetna Casualty and Surety Co.*, 92 N.J. 550, 458 A.2d 106 (1983). Moreover, the more specific provisions of the uninsured motorist section govern the more general schedule. Thus Anderson's trailer was a covered vehicle at the time of the accident.

Guarantee also contends that Anderson is barred from any recovery because he was not an insured person under the policy, which provides:

II. PERSONS INSURED

Each of the following is an insured under this insurance to the extent set forth below:

(a) the named insured and any designated insured and, while residents of the same household, the spouse and relatives of either;

(b) *any other person while occupying an insured highway vehicle;* and

(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by an insured under (a) or (b) above.

(Emphasis added.) Guarantee claims that Anderson was not "occupying" the insured vehicle at the time of the accident. The term "occupying" is defined in the policy as "in or upon or entering into or alighting from" such insured highway vehicle. This

1. The parties have stipulated to the dismissal of the named insured, National Freight, Inc., from this action. Anderson was an independent contractor for National Freight, Inc.

language has been construed to permit coverage for persons who have descended from the insured vehicle but who have not finished using the vehicle. *Contrisciane v. Utica Mutual Insurance Co.*, 459 A.2d 358, 360 (Pa.Super.1983) (citing cases). In *Contrisciane*, an employee was permitted to collect under his employer's uninsured motorist insurance where the employee was hit by an uninsured driver while standing next to a police car after a minor, unrelated traffic accident involving the employer's car. In *Newcomb Hospital v. Fountain*, 141 N.J.Super. 291, 357 A.2d 836 (1976), the court construed the term "occupying" in the New Jersey Automobile Reparations Reform Act, N.J.S.A. § 39:6A–4, to include a person who has descended from a vehicle but who has not reached his ultimate destination. The injured person there had left her car to watch a gas station attendant add water to the radiator. Here, Anderson was "occupying" the trailer under the policy since he had not terminated his use but had merely stopped to determine the source of a problem with the truck.

■ Anderson argues that he is a "named insured" under the policy. This contention conflicts with the plain, unambiguous language of the policy, which states that the named insured is National Freight, Inc. A corporate employee is not entitled to the status of the named insured when the policy states that the named insured is the corporation. *Hartford Accident and Indemnity Co. v. Richendollar*, 368 So.2d 603 (Fla.Dist.Ct.App.1979) (corporate vice president and major shareholder not entitled to be classified as named in-

sured under corporation's uninsured motorist policy); *Cunningham v. Insurance Company of North America*, 213 Va. 72, 189 S.E.2d 832, 835 (1972) ("the court cannot substitute the name of each of the many employees of the Virginia Department of Highways in place of that of the Department as the named insured").

■ Guarantee's contention that Anderson's claim under the National Freight policy is barred by the New Jersey Workmen's Compensation Act, N.J.S.A. §§ 34:15–1 *et seq.*, must be rejected. That statute provides the exclusive remedy for an injured employee against his *employer*. It does not prevent collection from an insurer under an insurance contract maintained by the employer for the employees, even if that contract requires payment by the employer of a stated deductible amount. *Cf. Bellafronte v. General Motors Corp.*, 151 N.J.Super. 377, 376 A.2d 1294 (1977) (employee permitted to recover under employer's automobile liability insurance where statute does not exempt from coverage victims covered by workers' compensation); *Cano v. Travelers Insurance Co.*, 656 S.W.2d 266, 269–70 (Mo. *en banc* 1983) (workers' compensation payments cannot be offset against uninsured motorist coverage).

■ The most difficult issue presented by these motions is whether the National Freight uninsured motorist policy can be stacked by Anderson, despite the policy's limitations in the uninsured motorist provision of $100,000 per person per accident.[2] Anderson claims that despite this limitation, he should be allowed to cumulate the

**2.** The policy provides:
   Limits of Liability: Bodily Injury—
   each person $100,000
   each accident $300,000

   III LIMITS OF LIABILITY
   Regardless of the number of (1) persons or organizations who are insureds under this insurance, (2) persons or organizations who sustain bodily injury or property damage, (3) claims made or suits brought on account of bodily injury or property damage, or (4) highway vehicles to which this insurance applies,

(a) The limit of bodily injury liability stated in the schedule as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting "each person", the limit of liability stated in the schedule as applicable to "each accident" is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident.
There is no contention that this clause is ambiguous.

$100,000 limit per vehicle so that he can recover up to the sum of $100,000 times the number of vehicles insured under the policy. In *Lundy v. Aetna Casualty and Surety Co.*, 92 N.J. 550, 458 A.2d 106 (1983), the New Jersey Supreme Court allowed two injured individuals to pyramid the uninsured motorist coverages for each vehicle under a single policy, issued to their relatives living in the same household, and covering more than one car. The question is whether the New Jersey Supreme Court would apply this principle to the situation where an employee seeks to cumulate the uninsured motorist coverage maintained by his employer in one policy for a fleet of vehicles. This Court must predict how the state's Supreme Court would resolve this issue of first impression. *Becker v. Interstate Properties*, 569 F.2d 1203, 1205 (3d Cir.1977).

■ There are two differences between this case and *Lundy* which support the prediction that the New Jersey Supreme Court would not require stacking here:

1. In *Lundy*, unlike this case, there was an ambiguity in the policy on the issue of cumulation which the Court construed against the insurer. A clause in the *Lundy* policy prohibited stacking on all parts of the policy except the uninsured motorist section. Since uninsured motorist coverage was excluded from the coverages for which stacking was explicitly banned, the Court reasoned that stacking was permitted by implication under the uninsured motorist provision. There is no such ambiguity in the policy in this case. Instead, the uninsured motorist coverage unambiguously limits liability to $100,000 per person for all damages from bodily injury sustained by one person in one accident. There are no provisions like the one in *Lundy* which support the conclusion that stacking should be permitted by implication from a ban on stacking in other provisions of the policy.

2. The majority of states which have applied the *Lundy* stacking rule to named insureds or members of their household do not permit stacking for other persons who are insured only because they are occupy-

ing an insured vehicle with the owner's consent. *Cunningham v. Insurance Company of North America*, 213 Va. 72, 189 S.E.2d 832 (1972); *Ohio Casualty Insurance Co. v. Stanfield*, 581 S.W.2d 555 (Ky. 1979); *Lambert v. Liberty Mutual Insurance Co.*, 331 So.2d 260 (Ala.1976); *Auto-Owners Insurance Co. v. Traviss*, 72 Mich. App. 66, 248 N.W.2d 673 (1977); *Continental Casualty Co. v. Darch*, 27 Wash.App. 726, 620 P.2d 1005 (1980); *Doerner v. State Farm Mutual Automobile Insurance Co.*, 337 N.W.2d 394 (Minn.1983); *Lopez v. Foundation Reserve Insurance Co.*, 98 N.M. 166, 646 P.2d 1230 (1982); and *Hines v. Government Employees Insurance Co.*, 656 S.W.2d 262 (Mo.1983) (*en banc*). These cases are based on an interpretation of the reasonable expectations of the parties to the insurance contracts. The notion is that named insureds have purchased coverage for themselves and members of their households depending on the number of household vehicles. They have not purchased coverage for others who drive one of the household vehicles with consent, except for the one vehicle as to which permission to drive is granted. The uninsured motorist coverage is personal insurance for the named insureds and members of their households regardless of their location or activity at the time of the accident, but only covers consensual drivers while using a particular vehicle.

A minority of jurisdictions following the *Lundy* rationale as to named insureds and their household members also permit stacking by those who are insured because they occupy the insured vehicle with the owner's consent. *Novoseller v. Royal Globe Insurance Co.*, 463 A.2d 1163 (Pa.Super.1983); *Estate of Calibuso v. Pacific Insurance Co.*, 62 Hawaii 424, 616 P.2d 1357 (1980); *Kemp v. Allstate Insurance Co.*, 183 Mont. 526, 601 P.2d 20 (1979); and *Barbin v. United States Fidelity and Guaranty Co.*, 315 So.2d 754 (La.1975). The basis for this result is a determination of state policy to provide "widespread protection against a recognized peril." *Estate of Calibuso v. Pacific Insurance Co.*, 616 P.2d at 1362.

This Court predicts that the New Jersey Supreme Court would not permit stacking in the present case. An important part of *Lundy* is that the insured paid separate premiums for coverage on each vehicle, and thus contracted for multiple coverage for himself and his household. The coverage extended to the *Lundy* plaintiffs regardless of whether their injuries were sustained in an insured vehicle. "However, this argument and reasoning does not apply to a permissive user of a vehicle who pays no premium and does not receive the broader uninsured motorist coverage of a named insured." *Cunningham v. Insurance Co. of North America*, 213 Va. 72, 189 S.E.2d 832, 836 (1972). Anderson was only insured because of his relationship to an insured truck. Unlike *Lundy*, the undisputed facts in this case are that the policy here was rated on a maximum uninsured motorist liability of $100,000 per claimant regardless of the number of autos covered by the policy (George Affidavit, ¶ 6), and that premiums for coverage were not charged based on the number of trailers owned by National Freight (George Affidavit, ¶ 7). To the contrary, the insurer in *Lundy* had accepted the stacking exposure, and conceded that there would be stacking if separate policies had been issued for each car as a matter of form, instead of one policy covering several cars. The *Lundy* plaintiffs were covered whether or not they were occupying an insured vehicle. Mr. Anderson was covered in this case only while occupying an insured vehicle.

The heart of *Lundy* is that the named insured bought personal coverage per car for himself and members of his household against uninsured motorists, whether or not they were injured while occupying an insured vehicle. The premium for this coverage was calculated on the basis of the number of cars insured. As the *Lundy* Court observed, "[t]his statutory protection may also be extended to persons other than the named insured when the insuring company has contractually extended the coverage in the policy." 92 N.J. at 555, 458 A.2d 106. The uncontroverted facts in this record establish that the insurance company and National Freight did not contractually extend the coverage to provide stacking. The differences between this case and *Lundy* suggest that the New Jersey Supreme Court would follow the majority rule and let stand the bargain between National Freight and the insurer.[3]

Plaintiff's motion for summary judgment is therefore granted. Defendant's motion for summary judgment is denied. The parties may submit an appropriate form of order for a declaratory judgment.

---

**3.** Another difference between this case and *Lundy* is that the statutory imperative which produced the result of stacking does not press as strongly here. It is not clear that the uninsured motorist statute, which in *Lundy* required minimum coverage for the insured for each vehicle, applies to trailers. *See* N.J.S.A. § 39:1–1 (definitions of Motor Vehicle Code); *GEICO v. Daniels*, 180 N.J.Super. 227, 434 A.2d 648 (1981); *American Mutual Liability Insurance Co. v. Chaput*, 95 N.H. 200, 60 A.2d 118 (1948). Further, the state legislature has amended the uninsured motorist statute to reverse the result in *Lundy* for accidents after January 1, 1984.