714 A.2d 967

OFELIA DE ALMEIDA, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF ARLINDO DEALMEIDA, JR., DECEASED, PLAINTIFF–APPELLANT, v. GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued July 14, 1998—Decided July 30, 1998.

Before Judges STERN and KIMMELMAN.

*Anthony J. Monaco* argued the cause for appellant (*D. Bruce Unger*, attorney; *Mr. Unger*, on the brief).

*Warren Usdin* argued the cause for respondent (*Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski*, attorneys; *Elliott Abrutyn*, of counsel; *Mr. Usdin*, on the brief).

The opinion of the court was delivered by

STERN, J.A.D.

Plaintiff, individually and as executrix of her husband's estate, appeals from the dismissal of her complaint seeking underinsured motorist ("UIM") benefits. Plaintiff's husband ("decedent") was struck and killed while loading construction cones and signs onto his employer's truck at a work site on the Garden State Parkway. Plaintiff seeks UIM benefits from the carrier of decedent's employer. The trial judge held there was no coverage because decedent was not "occupying" his employer's truck at the time of the accident. We are told that the tortfeasor had only $300,000 in liability coverage, that decedent's personal policy had only $250,-000 in UIM protection, and that defendant's policy provided $1,000,000 in UIM coverage.[1]

The facts are essentially undisputed. Decedent was a construction supervisor for the insured, Earle Asphalt Company, while doing road repaving on the Parkway in Sayreville on October 12, 1995. He and others were picking up signs and cones and putting them on Eagle's truck at the end of the work day. As found by the trial judge:

---

[1] Plaintiff wrote a *"Longworth* letter" to defendant because the tortfeasor's insurance company offered its policy limits of $300,000. *See Rutgers Cas. Ins. Co. v. Vassas,* 139 *N.J.* 163, 652 *A.2d* 162 (1995); *Longworth v. Van Houten,* 223 *N.J.Super.* 174, 538 *A.2d* 414 (App.Div.1988). *See also Grant v. Amica Mut. Ins. Co.,* 153 *N.J.* 433, 435–37, 710 *A.2d* 426 (1998); *New Jersey Mfrs. Ins. Co. v. Breen,* 153 *N.J.* 424, 426, 429–32, 710 *A.2d* 421 (1998); *Magnifico v. Rutgers Cas. Ins. Co.,* 153 *N.J.* 406, 415–16, 710 *A.2d* 412 (1998); *French v. New Jersey Sch. Bd. Ass'n Ins. Group,* 149 *N.J.* 478, 489, 495, 694 *A.2d* 1008 (1997) (finding UIM coverage even if such coverage under personal policy not triggered). When defendant denied coverage, plaintiff filed this complaint.

> [D]ecedent was out of the vehicle picking up cones and signs at a construction site on the Garden State Parkway in Sayreville, New Jersey, on October 12, 1995. The vehicle belonging to the employer was on the roadway and decedent, according to the co-employee and eyewitness, went back to retrieve a sign. He was struck by a vehicle that crossed over the marked line and entered the closed lane. He was described in the police report as a "pedestrian". The area under construction had been "coned, signed, and illuminated" according to the Manual for Traffic Control in Work Areas.
>
> According to the report prepared by the [New Jersey State] Police, the victim was propelled thirty-six feet and the vehicle that struck decedent impacted "with a parked construction vehicle" owned by decedent's employer, Earle Asphalt.

The trial judge concluded:

> Under these facts, I found that decedent was not "occupying" the vehicle according to the definition in the policy, since "occupying" was defined as "in, upon, getting in, on, out or off".

Plaintiff argues that, as the policy insured a business entity, it protected the employees and provided UIM coverage for injuries related to use of the employer's vehicle. She cites *French v. New Jersey Sch. Bd. Ass'n Ins. Group*, 149 *N.J.* 478, 494–95, 694 *A*.2d 1008 (1997) and *Cook–Sauvageau v. PMA Group*, 295 *N.J.Super.* 620, 627, 685 *A*.2d 978 (App.Div.1996), *certif. denied*, 150 *N.J.* 29, 695 *A*.2d 671 (1997); *see also New Jersey Mfrs. Ins. Co. v. Breen*, 153 *N.J.* 424, 710 *A*.2d 421 (1998).[2]  Plaintiff also asserts that she

---

[2] The policy provided in this case that "[i]f you are an individual, any 'family member' " is an "INSURED."  In *New Jersey Mfrs. Ins. Co. v. Breen*, 153 *N.J.* 424, 710 *A*.2d 421 (1998), plaintiff obtained UIM benefits under the business vehicle policy even though that vehicle was not involved in the accident and Breen was operating her own car.  153 *N.J.* at 425–26, 710 *A*.2d 421.  However, in *Breen* "[t]he uninsured (UM) and the UIM coverage under the NJM policy expressly applied to family members of the named insureds.  The named insureds included Cardinell Products and Mr. and Mrs. Pilcer," Breen's parents. *Id.* at 426, 710 *A*.2d 421.  Plaintiff has not provided us with a copy of the declaration page of his policy but does not contend he is a "named insured." *See also Progressive Cas. Ins. Co. v. Brightstone Waterproofing, Inc.*, 295 *N.J.Super.* 581, 685 *A*.2d 959 (App.Div.), *certif. granted*, 149 *N.J.* 34, 692 *A*.2d 48 (1997); *Guarantee Ins. Co. v. Anderson*, 585 *F.Supp.* 408, 411 (E.D.Pa.1984).  In light of our disposition, we need not consider plaintiff's argument that decedent was an "additional insured" for purposes of the "loading" of the truck, *cf. Kennedy v. Jefferson Smurfit Co.*, 147 *N.J.* 394, 688 *A*.2d 89 (1997) (involving "use" clause of liability policy) or was the equivalent of a "named insured" for purposes of a work related accident involving the covered vehicle.

is entitled to the UIM benefits of defendant's policy because decedent was "occupying" the covered vehicle at the time of the accident. Defendant's policy provides coverage for "[a]nyone ... 'occupying' a covered 'auto.'" Under the policy, "'[o]ccupying' means in, upon, getting in, on, out or off" the covered vehicle.

Defendant acknowledges that, under similar policies, "employees injured in the scope of their employment in accidents involving their employer's motor vehicles are entitled to UIM coverage under the employer's policy," at least where the injured worker was "'occupying' the insured vehicle." *See French, supra,* 149 *N.J.* at 488–90, 694 *A*.2d 1008; *Cook–Sauvageau, supra,* 295 *N.J.Super.* at 626–27, 685 *A*.2d 978. The parties agree that the "determination of whether the policy definition of 'occupying' is satisfied" requires a "case-by-case analysis, depending on the facts of the accident and of the use of the vehicle." *Mondelli v. State Farm Mut. Auto. Ins. Co.,* 102 *N.J.* 167, 172, 506 *A*.2d 728 (1986) (involving a claim for uninsured motorist benefits and noting that "[m]ere coincidental connection between the accident and some touching of the car would not be enough") (quoting *Mondelli v. State Farm Mut. Auto. Ins. Co.,* 193 *N.J.Super.* 522, 532, 475 *A*.2d 76 (1984) (Petrella, J., concurring in part and dissenting in part)).

Plaintiff contends that there is coverage in these circumstances because "[j]ust prior to the accident [decedent] had actually been 'in' the truck. He had, only moments before the accident, gotten 'off' the truck and *but for* the accident, he would have gotten 'in' and 'on' the vehicle." Defendant subscribes to the "but for" test, but insists that coverage has been found only where the employee or injured party was "occupying" the vehicle at the time of the accident and "where there was a true nexus between the vehicle and the accident." *See Progressive Cas. Ins. Co. v. Brightstone Waterproofing, Inc.,* 295 *N.J.Super.* 581, 584, 685 *A*.2d 959 (App. Div.1996) (driver trying to get into insured van that had been stolen entitled to UM benefits), *certif. granted,* 149 *N.J.* 34, 692 *A*.2d 48 (1997); *Burns v. Market Transition Facility of N.J.,* 281 *N.J.Super.* 304, 657 *A*.2d 472 (App.Div.1995) (good Samaritan

entitled to PIP benefits for injuries sustained while rendering aid to driver in insured vehicle). According to defendant, the covered vehicle was not actually involved in the accident, the decedent here "was not in physical contact with the truck, he was not in close geographical proximity to the truck [being ten feet away], and there was no substantial nexus between the truck and the accident." It contends that "[t]o extend the term 'occupant' to someone ten feet away, engaged in adjusting a traffic cone, merely because he had once been a passenger in the insured vehicle, and would probably be a passenger again, simply distorts the meaning of the word 'occupant' beyond any ordinary meaning."

But defendant ignores the fact that, in addition to decedent's contemplated use of the vehicle as a passenger upon completion of his ongoing task, he was actually loading the covered vehicle while it was on the roadway at the time of the accident.

In *Newcomb Hosp. v. Fountain,* 141 *N.J.Super.* 291, 293, 357 *A.*2d 836 (Law Div.1976), a car occupied by Fountain was stopped at a gas station and he "left the vehicle to watch the attendant adding water to the radiator." He was severely injured in a resulting explosion and fire. *Ibid.* The Law Division found that Fountain was an "occupant" of the vehicle because he "had not reached his destination at the time of the accident." *Id.* at 295, 357 *A.*2d 836. The court found the stop at the service station was "incidental to the purpose of the trip" and that "Fountain would have returned to the vehicle interior" "[a]fter the attendant serviced the car." *Ibid.*

Similarly, in *Guarantee Ins. Co. v. Anderson,* 585 *F.Supp.* 408, 410–11 (E.D.Pa.1984), the United States District Court applying New Jersey law held that the defendant was "occupying" the truck he was driving while he was on the shoulder of a highway examining the vehicle "to determine what was causing the truck to emit black smoke." The *Guarantee* court, following *Newcomb,* held that "Anderson was 'occupying' the trailer under the policy since he had not terminated his use but had merely stopped to

determine the source of a problem with the truck." *Id.* at 411. Here, as in *Guarantee,* plaintiff was using the vehicle in connection with his work at the time of the accident. *See also Lindstrom v. Hanover Ins. Co.,* 138 *N.J.* 242, 251–52, 649 *A.*2d 1272 (1994) (PIP coverage for random "drive-by" shooting from passing car).

We are aware of *Aversano v. Atlantic Employers Ins. Co.,* 290 *N.J.Super.* 570, 676 *A.*2d 556 (App.Div.1996), *aff'd o.b.,* 151 *N.J.* 490, 701 *A.*2d 129 (1997), in which it was recently held that a person "injured by stepping into a pothole in a parking lot as he was walking towards his car with key in hand, right arm extended, reaching for the lock" and who "made contact with his car" as he fell, *id.* at 572, 676 *A.*2d 556, was not "occupying, entering into, alighting from or using an automobile," *N.J.S.A.* 39:6A–4, for purposes of P.I.P. coverage, *id.* at 574–75, 676 *A.*2d 556. But in that case there had not yet been "physical contact with the vehicle . . . with intent to enter" after leaving it in the parking lot. *Id.* at 575, 676 *A.*2d 556. Here, we find that the decedent never relinquished his "occupancy" status. He was retrieving the cones and loading the truck as part of his work efforts which involved utilization and occupancy of the vehicle.

We are satisfied that, under the circumstances, plaintiff is entitled to UIM coverage under his employer's policy. Accordingly, we reverse the dismissal of the complaint and remand for further proceedings consistent with this opinion.