793 A.2d 592

FRANKLIN TORRES, PLAINTIFF–APPELLANT, v.
THE TRAVELERS INDEMNITY COMPANY,
DEFENDANT–RESPONDENT.

Argued February 13, 2002—Decided March 14, 2002.

PER CURIAM.

The facts underlying this appeal are undisputed. On the morning of February 15, 1994, plaintiff Franklin Torres was working in

his capacity as a warehouse manager for Cornell Surgical Company (Cornell). A UPS truck came to Cornell's warehouse to drop off packages. Almost immediately after that truck left the warehouse, Torres discovered that a certain package was missing.

In accordance with his employment duties, Torres used a Cornell van to search for the UPS driver and the missing package. Having located the UPS truck double-parked around the corner, Torres stopped the Cornell van a few inches behind it. Torres then exited the van, and, with the UPS driver's permission, entered the delivery truck to search for the missing package with the driver. At trial, Torres stated that he believed that the Cornell van was still running when he exited it.

Because Torres was unable to find the missing package in the UPS truck, he then exited from the driver's side door of the truck and began walking back towards the Cornell van. While walking in the street along the side of the UPS truck, and a few inches away from the front of the Cornell van, Torres saw another truck approaching him. He raised his right hand in an attempt to get the driver of the third vehicle to stop so that he could enter the Cornell van and avoid being hit. However, the "box portion" of the third vehicle accidentally struck Torres, pinning him between the third vehicle and the UPS truck. As a result of that accident, Torres alleges that he suffered serious bodily injuries.

After determining that the vehicle that struck him was uninsured, Torres made a claim on Cornell's commercial automobile carrier, defendant Travelers Indemnity Insurance Co. (Travelers), seeking uninsured motorist (UM) arbitration. Cornell's policy with Travelers contained a New Jersey uninsured and underinsured motorist coverage endorsement that stated the following:

### B  WE WILL PAY

1. We will pay all sums the insured is legally entitled to recover as compensation damages from the owner or driver of an uninsured motor vehicle or underinsured motor vehicle. The damages must result from bodily injury sustained by the insured, or property damage caused by an accident. The owner's or

driver's liability for these damages must result from the ownership, mainte-
nance or use of the uninsured motor vehicle or underinsured motor vehicle.

Under that policy, the term "insured" included "[a]nyone else occupying a covered auto or a temporary substitute for a covered auto." In addition, the policy defined "occupying" as "in, upon, getting in, on, out or off." All parties agree that the Cornell van was a "covered auto." Travelers denied coverage on the ground that Torres did not qualify as an "insured" because he was not "occupying" the Cornell van.

Torres sought judgment declaring that Travelers had a duty to provide him with uninsured motorist coverage and was required to engage in arbitration to determine the amount that it owed. Travelers answered, denying the allegations of the complaint. After a bench trial, the trial court ruled in favor of Travelers, finding that, at the time of the accident, Torres was not occupying the Cornell van.

Torres appealed and the Appellate Division affirmed. Judge Stern dissented on the ground that Torres was "occupying" the insured vehicle within the meaning of relevant precedent and that there was a "sufficient nexus" between the vehicle and the accident to require coverage. We agree with Judge Stern and reverse, substantially for the reasons expressed in his thorough and thoughtful opinion.

We add only this. In *Mondelli v. State Farm Mutual Automobile Insurance Co.*, 102 *N.J.* 167, 172, 506 *A.2d* 728 (1986), we held that the meaning of the term "occupying" in a UM clause must be determined on a case-by-case basis, depending on the facts of the accident and the use of the vehicle, and that "[m]ere coincidental connection between the accident and some touching of the car would not be enough." *Id.* at 172, 506 *A.2d* 728. We reaffirm those principles here. In the final analysis, as Judge Stern aptly pointed out, in order to obtain UM coverage where occupancy is in issue, a plaintiff is required to establish a substantial nexus between the insured vehicle and the injury sustained. *See Guarantee Ins. Co. v. Anderson*, 585 *F.Supp.* 408 (E.D.Pa.

1984) (applying New Jersey law); *De Almeida v. General Acc. Ins. Co. of America,* 314 *N.J.Super.* 312, 714 *A.*2d 967 (App.Div. 1998), *cert. denied,* 157 *N.J.* 541, 724 *A.*2d 801 (1998); *Salamone v. Regency Palace,* 337 *N.J.Super.* 374, 766 *A.*2d 1231 (Law Div. 2000); Cynthia M. Craig & Daniel J. Pomeroy, *New Jersey Auto Insurance Law—No Fault (PIP), Uninsured & Underinsured Motorists* 1 (2002). That nexus was proved in this case.

The judgment of the Appellate Division is reversed for the reasons stated in the opinion of Judge Stern. The matter is remanded for arbitration of the amount owing under the policy.

VERNIERO, J., dissenting.

In the everyday, commonly understood sense of things, plaintiff did not "occupy" the insured vehicle at the time of his unfortunate accident. To the extent that the cases cited by the majority justify a contrary conclusion, they should be limited to their unique facts or overruled. Those cases require courts to engage in a form of line drawing that has no discernible boundaries. I acknowledge that the Court's disposition may have the salutary effect of reinstating this one plaintiff's claim. In the last analysis, however, today's holding reflects a missed opportunity to infuse a measure of common sense into an unpredictable area of our law. I respectfully dissent.

*For reversal and remand*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, LaVECCHIA, and ZAZZALI—6.

*For dissent*—Justice VERNIERO—1.