Dick L. Lambert sued Coregis Insurance Company, Inc., seeking uninsured/underinsured-motorist ("UM") benefits under an insurance policy issued by Coregis to Lambert's employer, South Alabama Utilities. That policy provided UM coverage for South Alabama Utilities' company vehicles. Coregis answered the complaint and shortly thereafter moved for a summary judgment arguing that Lambert was not an "insured" as that term is defined in the Coregis policy covering the company. The trial court entered a summary judgment in favor of Coregis. We affirm.
 Facts and Procedural History
This case arose from an accident that occurred on June 20, 2000. On that day, Lambert, in the course of his employment for South Alabama Utilities, was assisting several other employees in installing a 12-inch water main along Snow Road in Mobile County. Lambert had driven to that site in a company truck at approximately 7:30 that morning and had been working at the site the entire morning.
A few minutes before 11 a.m., Lambert went to his company truck to lift a jug of water out of the truck. Immediately afterward, Lambert positioned himself a few feet off the side of the road between his company truck and another company truck that was parked about 18 feet away from Lambert's truck and facing in the opposite direction, so that the trucks were bumper to bumper. At this time, Lambert was positioned about seven to nine feet from *Page 1158 
the back of the company truck he had driven that morning and was waiting for a backhoe operator to finish putting dirt back into the trench where the water main had been installed.
Brian Shane Contestibile, an employee of Southeastern Exterminators, Inc., was driving along Snow Road that morning. As he approached the utility worksite, Contestibile swerved off the road and hit Lambert as he was standing between the two South Alabama Utilities trucks. Lambert became entangled in the side mirror of Contestibile's vehicle and was dragged several feet until Lambert hit the bumper of his company truck; at that point he rolled underneath the company truck. Lambert immediately got out from under the truck and stood up, but he had sustained various injuries. It is unclear whether any of the injuries were caused by the contact with Contestibile's vehicle or with the bumper of the company truck.[1]
Lambert sued Contestibile and Contestibile's employer. Those claims were ultimately settled. Lambert also sued his own employer and his employer's workers' compensation insurance carrier, seeking workers' compensation benefits. The workers' compensation portion of the case was tried; it was determined that Lambert was permanently and totally disabled.
Lambert then sued Coregis, South Alabama Utilities' UM carrier. Coregis and South Alabama Utilities had entered into a comprehensive insurance agreement that originally went into effect on August 22, 1998; it was renewed on August 22, 1999, for a one-year term. Part of the insurance agreement is a "business auto coverage form" with an UM endorsement. There is also an "auto medical payments coverage" included in the agreement.
The original declarations in the insurance agreement identify the named insured as South Alabama Utilities, and page 1 of the business auto coverage form defines "you" as the named insured shown in the declarations.
Section II of the business auto coverage form addresses liability coverage, as follows:
 "A. COVERAGE
 "We will pay all sums an `insured' legally must pay as damages because of `bodily injury' or `property damage' to which this insurance applies, caused by an `accident' and resulting from the ownership, maintenance or use of a covered `auto.'
 ". . . .
 "1. WHO IS INSURED
 "The following are `insureds':
 "a. You for any covered `auto.'
 "b. Anyone else while using with your permission a covered `auto' you own. . . ."
The UM endorsement expressly modifies the insurance provided under the business auto coverage form; it states:
 "A. Coverage
 "1. We will pay all sums the `insured' is legally entitled to recover as damages from the owner or driver of an `uninsured motor vehicle.' The damages must result from `bodily injury' sustained by the `insured' caused by an `accident'. . . .
 ". . . .
 "B. Who Is An Insured
 "1. You. *Page 1159 
 "2. If you are an individual, any `family member.'
 "3. Anyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto'. The covered `auto' must be out of service because of its breakdown, repair, servicing, loss, or destruction.
 "4. Anyone for damages he or she is entitled to recover because of `bodily injury' sustained by another `insured.'
 ". . . .
 "F. Additional Definitions
 "As used in this endorsement:
 ". . . .
 "2. `Occupying' means in, upon, getting in, on, out or off."
(Emphasis added.)
The auto medical payments coverage also expressly modifies the insurance provided under the business auto coverage form; it states:
 "B. WHO IS AN INSURED
 "1. You while `occupying" or, while a pedestrian, when struck by any `auto.'
 "2. If you are an individual, any `family member' while `occupying" or, while a pedestrian, when struck by any `auto.'
 "3. Anyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto.' The covered `auto' must be out of service because of its breakdown, repair, servicing, loss, or destruction."
(Emphasis added.)
The auto medical payments coverage uses the same definition for "occupying" as does the UM endorsement — "in, upon, getting in, on, out or off."
The trial court held that Lambert did not qualify as an insured under the UM endorsement because "[e]ven construing the insurance contract liberally in favor of the putative insured, Mr. Lambert, and against the insurer Coregis, no plausible definition of `occupying' describes Mr. Lambert. . . ." The trial court concluded that "[t]he common usage of the term `occupying' a vehicle would not encompass a body glancing off the bumper en route to the ground."[2]
 Standard of Review
"We review a summary judgment de novo. Mobile Airport Auth.v. HealthSTRATEGIES, Inc., 886 So.2d 773, 779 (Ala. 2004). We accord the lower court's legal conclusions no presumption of correctness. Id." Safeway Ins. Co. of Alabama v.Herrera, 912 So.2d 1140, 1143 (Ala. 2005).
In Hobson v. American Cast Iron Pipe Co.,690 So.2d 341, 344 (Ala. 1997), this Court set out the standard for reviewing a summary judgment:
 "In reviewing the disposition of a motion for summary judgment, `we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of *Page 1160 
material fact,' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988), and whether the movant was `entitled to judgment as a matter of law.' Wright v. Wright, 654 So.2d 542 (Ala. 1995); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala. 1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990)."
 Analysis
Lambert raises one issue on appeal: Lambert argues that, contrary to the trial court's holding, he qualifies as "an insured" under the policy because he was either "upon" or "on" the covered vehicle at the time of the accident and thus was "occupying" the vehicle under the terms of the policy. It should be noted at the outset that the word "getting" appears to modify the prepositions "in, on, out, or off in the policy provision defining "occupying" because the policy could not possibly cover everyone who was "out" or "off" the vehicle. See Rohlman v.Hawkeye-Sec. Ins. Co., 207 Mich.App. 344, 351,526 N.W.2d 183, 186 (1994) (concluding that "the parties could not realistically have intended that any stranger who is injured in an accident involving the covered vehicle and an uninsured motorist would be occupying the covered auto if it could only be shown that the stranger was somewhere `off the vehicle, or `out' of the vehicle"). Lambert does not argue that he was "getting on" the covered vehicle. Lambert contends only that he was "on" or "upon" the covered vehicle when he struck it. In any event, "upon" in modern usage is the equivalent of "on."Merriam-Webster's Collegiate Dictionary (11th ed.2003). Therefore, the two words should be treated as the same for the purpose of examining Lambert's argument.
Alabama has not adopted a specific test under which to examine the phrase "in, upon, getting in, on, out or off in order to determine whether a person is "occupying" a vehicle in the context of the insurance agreement at issue in this case. Other jurisdictions, however, have adopted specific tests for making such a determination. These tests include requiring the person injured to be "vehicle oriented," requiring the person to be in close proximity to the insured vehicle, and requiring actual physical contact with the vehicle.[3] The majority *Page 1161 
of jurisdictions hold that the meaning of L the term "occupying" must be determined on a case-by-case basis, depending on the facts of the accident and the use of the vehicle, and that there must always be C some causal connection between the injuries and the use of the vehicle. See, e.g., Torres v. TravelersIndem. Co., 171 N.J. 147, 148-49, 793 A.2d 592, 593 (2002).
In the present case, Lambert does not meet any of the above tests, and there was no causal connection between his injuries and the use of the company truck. Lambert was not "vehicle oriented" at the time the accident occurred because he was not engaged in a transaction essential to the use of the insured vehicle; instead, Lambert was merely standing on the side of the road waiting for his fellow employee to complete a task. The insured vehicle had absolutely no involvement, much less essential involvement, iii this transaction. Lambert was merely "highway oriented" or "pedestrian oriented" at the time of the accident, not "vehicle oriented." See D'Amour v. Amica Mut.Ins. Co., 153 N.H. 170, 891 A.2d 534 (2005). Furthermore, Lambert was not in actual physical contact with the covered vehicle at the time the accident occurred, which, as noted above, some jurisdictions, when interpreting the phrase "upon," require to find coverage. Lambert merely happened to come in contact with the bumper of the covered vehicle once he was knocked from the vehicle that had struck him. Therefore, it does not appear that in most jurisdictions Lambert would be considered to have been "occupying" the covered vehicle.
In Safeway Insurance Co., this Court laid out the rules for interpreting the terms of an insurance contract:
 "General rules of contract law govern an insurance contract. Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co., 817 So.2d 687, 691 (Ala. 2001). The court must enforce the insurance policy as written if the terms are unambiguous, id.; Liggans R.V. Ctr. v. John Deere Ins. Co., 575 So.2d 567, 569
(Ala. 1991). Whether a provision of an insurance policy is ambiguous is a question of law. Turvin v. Alfa Mut Gen. Ins. Co., 774 So.2d 597, 599
(Ala.Civ.App. 2000). To the extent the language of an insurance policy provision is ambiguous, all ambiguities must be resolved against the insurance company. Twin City Fire Ins. Co., 817 So.2d at 692. However, the parties cannot create ambiguities by setting forth different interpretations or `[by inserting] . . . strained or twisted reasoning.' Id. Moreover, the mere fact that a word or a phrase used in a provision in an insurance policy is not defined in the policy does not mean that the word or phrase is inherently ambiguous. Id. If a word or phrase is not defined in the policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it. Id. The court should not define words it is construing based on technical or legal *Page 1162 
terms. Liggans R.V. Ctr., 575 So.2d at 570."
912 So.2d at 1143.
In the present situation, Lambert first argues that the terms "upon" and "on", which are used to define the term "occupying" in the insurance agreement, are ambiguous and should be construed against Coregis. Lambert cites Black's LawDictionary (4th ed.1968), which defines "on" as "upon; as soon as; near to; along; along side of; adjacent to; contiguous to; at the time of; following upon; in; during; at or in contact with upper surface of a thing." Lambert also gives numerous examples of different ways the words "on" and "upon" are used, such as paint "on" a wall; the house "on" the bay; the robber held a gun "on" the victim; make a wish "upon" a star; etc., and he argues that the words "on" and "upon" are susceptible to many interpretations. However, contrary to Lambert's implication, merely because a term can be used in different ways in different contexts does not automatically make the term ambiguous. SeeAtlantic Mut. Ins. Co. v. Ruiz, 123 Cal.App.4th 1197,1210, 20 Cal.Rptr.3d 628, 633 (2004). If that was true, then almost any term in a contract would be ambiguous because words frequently have different meanings in different contexts.
A term in a contract is ambiguous only if, when given the context, the term can reasonably be open to different interpretations by people of ordinary intelligence. SeeSafeway Insurance Co., supra. In the context of the present situation, "upon" and "on" are used in defining the term "occupying," and the definitions of the words "upon" and "on" must be interpreted in relation to the term they are used to define. Specifically, "on" or "upon" indicate whether Lambert was "occupying" the covered vehicle even though he was several feet away from the covered vehicle when he was struck, was not engaged in any activity related to the covered vehicle, and happened to momentarily come in contact with the bumper of the covered vehicle during the accident Given that context, the terms are not ambiguous, and a reasonable person of ordinary intelligence would not believe that Lambert was "occupying" the covered vehicle by being on or upon it at the time the accident occurred because that interpretation would require straining or twisting the ordinary meaning of "occupying."
As noted earlier, "upon" in modern usage is the equivalent of "on." The applicable definitions of "on" found inMerriam-Webster's Collegiate Dictionary 865 (11th ed.2003) are as follows: "1 a — used as a function word to indicate position in contact with and supported by the top surface of . . . b — used as a function word to indicate position in or in contact with an outer surface . . . c — used as a function word to indicate position in close proximity with. . . ." Although it may be possible to give multiple meanings to the terms "on" or "upon" when those terms are standing alone, the only plain and common meaning of those terms in relation to the term "occupying" is for "upon" or "on" to mean in contact with and supported by the top surface of or in contact with an outer surface. Lambert's allegation that "upon" should be interpreted as "in close proximity with" or striking the vehicle would require payment of UM benefits to anyone who happens to be near a covered vehicle and injured when the vehicle is struck by an uninsured motorist even though the person has no connection with the owner, the named insured, or the covered vehicle. Therefore, contrary to Lambert's contention, the terms of the insurance policy are not ambiguous; thus, the insurance agreement should not be construed against Coregis. *Page 1163 
Furthermore, Lambert has not set forth any interpretation of the terms that would reasonably apply to the facts of this case. Lambert does set forth a "bumper sticker analogy," in which he states that a "sticker pasted to a vehicle is `on' or `upon' the vehicle." Therefore, Lambert argues, "[i]t was error for the trial court to determine, as a matter of law, that Dick Lambert, who was a bumper sticker when he was injured, was not `on' or `upon' the truck." We decline to accept this analogy. A person impacting a bumper on a vehicle and then falling under the vehicle is not analogous to a bumper sticker, which is physically attached to the bumper and supported by it. The analogy is, at best, strained and tenuous.
Again, the terms of the insurance policy are unambiguous; thus, this Court must enforce the policy as written. As written, in order to provide UM coverage under the policy Lambert must have been "upon" or "on" the covered vehicle, because those terms are used in defining "occupying." The facts here do not fit the plain and common meaning of the terms "upon" or "on" because Lambert was not in contact with and supported by the top surface of the covered vehicle or in contact with the outer surface of the vehicle when the accident occurred. Therefore, Lambert was not "occupying" the covered vehicle at the time the accident occurred and, as a matter of law, Lambert was not an insured under the terms of the policy and did not qualify for UM coverage.
A situation analogous to the present case occurred inRednour v. Hastings Mut. Ins. Co., 468 Mich. 241,661 N.W.2d 562 (2003). In Rednour, the plaintiff was driving his friend's car in Ohio when he had a flat tire.468 Mich, at 242, 661 N.W.2d at 563. The plaintiff got out of the car, loosened the lug nuts on the flat tire, and began to walk toward the rear of the car. He was struck by an oncoming automobile that threw him against the car he had been driving, injuring him. 468 Mich. at 242, 661 N.W.2d at 563. The plaintiff admitted that he had not been touching the car and that he had been approximately six inches from it when he was struck by the other vehicle. Id. The insurance policy at issue required that, in order to recover benefits, a person be "occupying" an "auto" if the accident takes place outside Michigan. Rednour, 468 Mich, at 243, 661 N.W.2d at 564. The policy defined "occupying" as "in, upon, getting in, on, out or off." 468 Mich, at 243, 661 N.W.2d at 564.
The plaintiff argued that he was "`upon' the car because he was pinned against it after being struck." Rednour,468 Mich. at 249, 661 N.W.2d at 567. The Supreme Court of Michigan held that physical contact with a vehicle alone does not establish that a person is "upon" the vehicle so that the person is "occupying" the vehicle, and an examination of the relevant dictionary definitions clarified that "one must be on
or up and on a vehicle in order to be `upon' it."468 Mich, at 250, 661 N.W.2d at 567 (footnote omitted). The court ultimately held that "[u]nder the policy definition of `occupying' that was adopted by the vehicle owner and the insurance company, plaintiff was not occupying the insured automobile when he sustained bodily injury." 468 Mich, at 251,661 N.W.2d at 568. Furthermore, the court noted the arbitrariness of the interpretation in the dissenting opinion that the insurance policy allowed the required contact with the covered vehicle to occur after the accident is initiated:
 "[I]f there are two persons who are struck by a vehicle while in the vicinity of the insured vehicle, and if one is thrown into the insured vehicle while the other is thrown into a tree, a highway, a *Page 1164 
curb, or a fence, only the former would be covered by the policy as interpreted by the dissent. Such happenstance does not form a rational basis for understanding the scope of coverage under an insurance policy."
Rednour, 468 Mich, at 250 n. 2, 661 N.W.2d at 567 n. 2.
Similarly, in the instant case, Lambert was not "occupying" the covered vehicle under the definition set forth in the policy because he was not "on" or "upon" the auto when he was hit by the other vehicle. A holding that a person in Lambert's situation qualified as being "upon" the covered vehicle would lead to arbitrary and irrational results.
The only prior decision of this Court that examined whether a person was "occupying" a covered vehicle for the purpose of UM coverage is Cook v. Aetna Insurance Co., 661 So.2d 1169
(Ala. 1995), which held that the plaintiff was not "occupying" the covered vehicle. However, this Court examined only the phrase "getting in" as that phrase was used in defining "occupying" and did not examine the word "upon," which is the basis for Lambert's argument.
In Cook, a car was waiting outside the plaintiffs residence while the plaintiff had crossed the street to buy a cup of coffee. He was struck by an uninsured motorist as he was returning to the car. 661 So.2d at 1171. This Court held that the plaintiff was not "getting in" the car waiting on him for purposes of "occupying" it when he was struck. This Court so concluded, in part, because the plaintiff had left his jacket and his lunch box in his residence, and the evidence tended to show, among other things, that the plaintiff intended to first retrieve these items and then to enter the car.
Furthermore, this Court held:
 "While we do not believe that Alabama should adopt a rigid requirement of physical contact, we agree with the authorities cited above that the act of `getting in' or entering a vehicle must be distinguished from approaching the vehicle, as well as from the act of preparing to enter the vehicle. We cannot agree that the term `getting in' as used in the Aetna policy is doubtful in meaning. Viewed in its context and applied to the facts of this case, the term `getting in' is plain and unambiguous. Hence, the question in this case must be decided according to the plain and common meaning of that term. As stated by the Georgia Court of Appeals in Major[ v. Allstate Ins. Co., 207 Ga.App. 805, 429 S.E.2d 172 (1993)], the plain and common meaning of that term is coming or going into, passing into the interior of — obviously meaning going or moving into. `Getting into,' we therefore conclude, is an affirmative act or movement to effect an entrance into an automobile."
Cook, 661 So.2d at 1173.
Lambert does not allege that he was "getting in" the covered vehicle, and because Cook did not examine the word "upon," it has very little relevance to the present case. However, Cook does support the rule that contract terms should be interpreted according to their plain and common meaning in the context of, and applied to, the particular facts of the case. As noted earlier, the plain and common meaning of "upon" or "on" in the context of this case does not lead to the conclusion that Lambert was "occupying" the covered vehicle as required by the policy.
 Conclusion
The terms of the insurance policy at issue are not ambiguous. Furthermore, Lambert was not "occupying" the covered vehicle when the accident occurred because *Page 1165 
he was not "on" or "upon" the vehicle as required by the policy. As the trial court held, no plausible definition of "occupying" a vehicle describes Lambert in this case. Therefore, as a matter of law, Lambert may not recover benefits under the UM or auto medical payments coverage. The trial court's summary judgment in favor of Coregis was proper; we affirm.
AFFIRMED.
NABERS, C.J., and LYONS, WOODALL, and PARKER, JJ., concur.
[1] There was some dispute as to whether Lambert's body ever actually impacted the South Alabama Utilities truck. However, for the purposes of considering Coregis's summary-judgment motion, the trial court assumed that Lambert's body had impacted the South Alabama Utilities truck at some point during the accident.
[2] With regard to the claim under the auto medical payments coverage, the trial court held that "[p]art B-3, which is `anyone else "occupying" a covered "auto"' does not apply on its face because the `auto' Mr. Lambert claims he was `occupying' was not out of service." It is unclear why the trial court makes this distinction between the clause defining who is an insured in the UM coverage section and the same clause in the auto medical payments coverage. In any event, the parties do not make an issue of this distinction on appeal, and it does not affect the outcome of the case. If Lambert was not "occupying" the covered auto, as the trial court expressly held, then he does not qualify as an insured under either the UM endorsement or the auto medical payments coverage.
[3] See Kentucky Farm Bureau Mut. Ins. Co. v.McKinney, 831 S.W.2d 164, 168 (Ky. 1992) (establishing a four-part test to determine if a person was "occupying" the insured vehicle: "(1) [t]here must be a causal relation or connection between the injury and the use of the insured vehicle; (2) [t]he person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it; (3) [t]he person must be vehicle oriented rather than highway or sidewalk oriented at the time; and, (4) [t]he person must also be engaged in a transaction essential to the use of the vehicle at the time."); D'Amour v. Arnica Mut. Ins. Co.,153 N.H. 170, 173. 891 A.2d 534, 537 (2005) (recognizing the "`vehicle orientation standard,' under which a claimant must be `engaged in a transaction essential to the use of the insured vehicle at the time of the accident' in order to be `occupying' the vehicle."); Simpson v. United States Fid. Guar.Co., 562 N.W.2d 627, 630-31 (Iowa 1997) (holding that UM coverage extended to anyone "in close proximity to the [covered auto]" and "engaged in an activity relating to the use of the [covered auto]"); Testone v. Allstate Ins. Co., 165 Conn. 126, 131-32, 328 A.2d 686, 690-91 (1973) (interpreting the phrase "in or upon" as requiring actual physical contact with the insured vehicle to afford coverage under the UM provisions).