946 A.2d 1090 (2008)
400 N.J. Super. 286
Clarence THOMPSON, Plaintiff-Respondent
v.
Robert JAMES and Robert Charles Enterprises, Inc., Defendants, and
CNA Insurance Company, Defendant-Appellant.
No. A-6713-06T2
Superior Court of New Jersey, Appellate Division.
Argued April 28, 2008.
Decided May 16, 2008.
*1091 Robert F. Priestley, Newark, argued the cause for appellant (Mendes & Mount, L.L.P., attorneys; Mr. Priestley and John M. Deitch, on the brief).
Kenneth S. Javerbaum, Springfield, argued the cause for respondent (Javerbaum, Wurgaft, Hicks, Kahn, Wikstrom & Sinins, attorneys; Mr. Javerbaum and Anthony J. Vinhal, on the brief).
Before Judges PARRILLO, GILROY and BAXTER.
The opinion of the court was delivered by PARRILLO, J.A.D.
This is an uninsured motorist (UM) coverage case where "occupancy" is in issue. Defendant CNA Insurance Company (CNA)[1] appeals from an order of the Law Division granting declaratory judgment and finding plaintiff Clarence Thompson covered under the UM provision of his employer's commercial automobile insurance policy. For the following reasons, we reverse.
The facts are essentially undisputed. In 2004, plaintiff was employed as a general project manager for Robert Charles Enterprises, a construction company in Linden, New Jersey. As part of his work responsibilities, plaintiff oversaw projects in New Jersey, Delaware, Maryland and *1092 Pennsylvania. Because plaintiff was required to travel to various project sites, his employer provided him with a car, which he drove for both work and personal use.
The car was insured by CNA, under a commercial automobile insurance policy issued to his employer. The employer was the only named insured. However, the policy's uninsured and underinsured motorist provision provided coverage to persons "occupying" the vehicle, and defined "occupying" as "upon, getting in, on, out or off" the covered vehicle.
On October 11, 2004, at around 9:30 a.m., as plaintiff was exiting the New Jersey Turnpike at Exit 13 on his way to work, he noticed a man standing on the grassy median between the two ramps heading towards Linden and Elizabeth. Believing that the man's car had broken down, plaintiff stopped to help. Plaintiff soon discovered that the man's car had not broken down, but that instead he was looking for jewelry that his girlfriend had thrown out the window of his car the night before, consisting of a large diamond ring, valued at approximately $65,000, and a tennis bracelet, valued at approximately $30,000. The man explained to plaintiff that he was going to post a reward for the return of the jewelry. The two continued to search but found nothing. The man then gave plaintiff his business card in case plaintiff found the jewelry, and plaintiff returned to his car and drove to work.
While at work, plaintiff called his girlfriend, Patricia Weise, and told her about the incident on the grassy median and the reward. When he said he was contemplating returning to look for the jewelry, she advised against it.
At around 3:00 p.m. that afternoon, plaintiff told his supervisor, Ernest Barbero, that he was going for some coffee and a snack, and he would be right back. He drove to an Exxon station located immediately off the Turnpike Exit 13 ramp, on Brunswick Avenue in Elizabeth, which was approximately a third of a mile from his office. After buying a soda and some chips, and a coffee for Barbero, plaintiff decided to fill up the car with gas in anticipation of a business meeting in Maryland the next day before returning to the office to finalize some contract bids. As the gas tank was being filled, plaintiff told the station attendant to move his car near the station's air pumps as he was going to walk across the street and he would be right back.
Plaintiff then returned to the grassy median of Turnpike Exit 13, the same location he had been that morning. To get there, plaintiff walked across four lanes of Brunswick Avenue until he reached a guardrail at the side of the exit ramp. He climbed over the guardrail and down into the grassy area of the exit ramp where he was struck by an uninsured motorist, Robert James, who was mentally deranged and admitted to police that he had "tried to kill" plaintiff. The accident occurred at 3:58 p.m., between twenty to fifty minutes after he parked his car. Plaintiff's car was later recovered from the parking lot of the Exxon station, approximately 350 feet from the scene of the accident.
Plaintiff suffered serious injuries from the accident. His last memory before awakening from a coma was speaking to the gas station attendant. He did not remember returning to the grassy median, or his reason for being there.[2]
*1093 Plaintiff filed a declaratory judgment action seeking a declaration of uninsured motorist (UM) coverage from CNA, his employer's commercial automobile insurer.[3] CNA answered, denying coverage. Upon denial of CNA's motion for summary judgment, the matter proceeded to a bench trial in the Law Division, resulting in a finding that plaintiff was covered by the UM provision of the CNA policy. Specifically, the judge determined that plaintiff was "occupying" the car at the time of the accident, and that his leaving the vehicle, per se, "d[id] not equate with a loss of occupancy status," explaining that plaintiff had not abandoned his vehicle but had only temporarily left it at the Exxon station with the intent to return to it and return to work. The court found that it was of no consequence that plaintiff was on a brief personal errand, looking for the jewelry, shortly before he was struck and injured, because his trip to refuel the car was otherwise work-related. The court reasoned:
I find a substantial nexus with plaintiff's use of the vehicle at the time and the injury sustained.
[P]laintiff left the vehicle at the Exxon station while or very shortly after his vehicle was filled with gas. He testified he told the Exxon gas station attendant he was leaving the car momentarily, uno momento, to go across [to] the grassy median.
Although [CNA] argues that he was so far away, whether the court accepts 200 or 400 feet away, the court finds that plaintiff's . . . actions were so interrelated . . . that they create a substantial nexus, an ongoing . . . [nexus] between plaintiff's use and occupancy of his vehicle and the accident that caused his injuries.
We disagree.
At issue here is whether plaintiff was "occupying" the car within the meaning of the CNA insurance policy, which, as noted, defined "occupying" as "upon, getting in, on, out or off" the covered vehicle. Clearly, "the interpretation of an insurance contract is a question of law which [the appellate courts] decide independent of the trial court's conclusions." Simonetti v. Selective Ins. Co., 372 N.J.Super. 421, 428, 859 A.2d 694 (App.Div.2004). Thus, our standard of review in this case is de novo since none of the material facts are disputed. In this regard, "when the language of an insurance policy is clear, [appellate courts] must enforce its terms as written." Conduit & Found. Corp. v. Hartford Cas. Ins. Co., 329 N.J.Super. 91, 99, 746 A.2d 1053 (App.Div.), certif. denied, 165 N.J. 135, 754 A.2d 1212 (2000). However, where the terms of an insurance policy are ambiguous, "we look for the probable intent of the parties and their reasonable expectations," ibid., and "any ambiguities should be construed against the insurer and in favor of the insured." Meier v. N.J. Life Ins. Co., 101 N.J. 597, 612-13, 503 A.2d 862 (1986). Further, the language of an insurance policy is to be interpreted liberally in favor of the insured. Bowler v. Fid. & Cas. Co. of N.Y., 53 N.J. 313, 321, 250 A.2d 580 (1969) (citations omitted). This is especially so in the case of uninsured and underinsured motorist coverage, which have the same purpose, "to make available insurance protection for accident *1094 victims where the tortfeasor did not have adequate insurance coverage." Handler v. State Farm Mut. Auto. Ins. Co., 253 N.J.Super. 641, 646, 602 A.2d 796 (App.Div.1992). That coverage is to be "liberally construed . . . to effectuate a broad range of protection to accident victims." Ibid. (citation omitted).
That said, whether a person is "occupying" a motor vehicle for purposes of uninsured or underinsured motorist coverage "must be determined on a case-by-case basis, depending on the facts of the accident and the use of vehicle." Torres v. Travelers Indem. Co., 171 N.J. 147, 149, 793 A.2d 592 (2002) (citing Mondelli v. State Farm Mut. Auto. Ins. Co., 102 N.J. 167, 172, 506 A.2d 728 (1986)). In the context of automobile negligence law, New Jersey courts have generally given a liberal interpretation of the term "occupying" in favor of an injured victim, and it is not necessary for the victim to be confined within the passenger compartment to be considered "occupying" a vehicle. For example, in Mondelli, supra, 102 N.J. at 169, 506 A.2d 728, the plaintiff sustained personal injuries when struck by a hit-and-run vehicle while he was leaning against his girlfriend's car, the insured automobile, which was parked at the curb. The plaintiff sought recovery under the uninsured motorist provision of his girlfriend's policy, which provided coverage to a person "occupying an insured highway vehicle," and defined "occupying" to mean "in or upon or entering into or alighting from" the covered vehicle. Id. at 171, 506 A.2d 728. The plaintiff argued that "he was `upon' his girlfriend's car and . . . [thus] `occupying' it when he was struck." Ibid.
The Court held that the plaintiff, who was "leaning on" the vehicle while conversing with the driver, fell within the definition of "occupying," regardless of whether he could demonstrate that he had or intended to "immediately use" the vehicle. Id. at 171-73, 506 A.2d 728. In construing the term "upon" as a part of the definition of "occupying," however, the Court cautioned against finding coverage based on "[m]ere coincidental" relationship between a motor vehicle accident and some touching of the vehicle. Id. at 172, 506 A.2d 728.
Similarly, in De Almeida v. Gen. Accident Ins. Co. of Am., 314 N.J.Super. 312, 317, 714 A.2d 967 (App.Div.), certif. denied, 157 N.J. 541, 724 A.2d 801 (1998), we concluded that it was possible for an individual who was outside of a vehicle to demonstrate that he or she was, nevertheless, "occupying" the vehicle within the meaning of the applicable insurance policy. There, an employee at a Parkway construction site was fatally injured when he was struck by a car as he stepped off his truck to retrieve and load construction cones onto his truck. Id. at 314, 714 A.2d 967. Finding that the decedent was "occupying" his truck at the time of the accident, we reasoned that "in addition to decedent's contemplated use of the vehicle as a passenger upon completion of his ongoing task, he was actually loading the covered vehicle while it was on the roadway at the time of the accident." Id. at 316, 714 A.2d 967. The decedent had "never relinquished his `occupancy' status. He was retrieving the cones and loading the truck as part of his work efforts which involved utilization and occupancy of the vehicle." Id. at 317, 714 A.2d 967.
To provide more clarity in this area, in 2002, our Court, in Torres, 171 N.J. at 149, 793 A.2d 592, supra, established the "substantial nexus" test. Under this test, to obtain coverage where occupancy is in issue, the plaintiff has the burden of demonstrating that there was "a substantial nexus between the insured vehicle and the injury sustained." Ibid. (citation omitted).
*1095 In Torres, the plaintiff, an employee of a surgical supply company, drove a company van to look for a UPS truck, which he believed had failed to deliver a package. Id. at 148, 793 A.2d 592. The plaintiff located the UPS truck, parked the company van a few inches behind it, exited the van, and, with the UPS driver's permission, searched the UPS truck for the missing package. Ibid. The plaintiff was struck by a third vehicle and sustained serious injuries as he exited the UPS truck and began walking back towards the company van. Ibid.
After determining that the vehicle that struck him was uninsured, plaintiff made a claim under his employer's commercial automobile policy, which defined "occupying" as "in, upon, getting in, on, out or off" the covered vehicle. Id. at 148-49, 793 A.2d 592. The Court concluded that the plaintiff was "occupying" his company's van for coverage purposes because there was a substantial nexus between the accident and the plaintiff's vehicle, inasmuch as the plaintiff was struck while walking back to, and within a few inches of, his company van, after having exited the vehicle in accordance with his employment duties. Id. at 148-49, 793 A.2d 592.
Subsequently, in Macchi v. Conn. Gen. Ins. Co., 354 N.J.Super. 64, 804 A.2d 596 (App.Div.), certif. denied, 175 N.J. 79, 812 A.2d 1111 (2002), the plaintiff, who was driving a car owned and insured by her husband's business, was en route to a video store with her son when she witnessed a one-car accident on the opposite side of the road. Id. at 68, 804 A.2d 596. She stopped the car in the vicinity of the accident and, as she stepped out of the car, told her son, who remained in the car, to call the police as she "would be right back." Ibid. The plaintiff also left her engine running, the lights on, and her purse in the car. Ibid. She was injured, only seconds later, while standing physically close to her car and near the uninsured disabled vehicle when it was hit by a separate vehicle, which caused it to spin around and strike her. Ibid.
Applying the rationale of Torres and Mondelli, we held that the plaintiff was "occupying" her husband's car within the meaning of the insurance policy, which defined "occupying" as "in, upon, getting in, on, out or off" the covered vehicle. Id. at 71-72, 804 A.2d 596. In reaching this conclusion, we noted that the fact that the plaintiff was on a personal errand, as opposed to in the course of her employment, "[wa]s of no consequence in applying the pertinent language of the insurance policy." Id. at 72, 804 A.2d 596. We also found it significant that she had "every intention of returning to the vehicle to continue [her] journey." Ibid.
Most recently, in Bogey's Trucking & Paving, Inc. v. Indian Harbor Ins. Co., 395 N.J.Super. 59, 68-69, 928 A.2d 96 (App.Div.2007), we held that an employee at a construction site, who was injured after he exited a dump truck in which he had been a passenger to assist the truck's driver, was "occupying" the truck for purposes of uninsured motorist coverage. There, the insurance policy provided "coverage to anyone `occupying' a covered `auto'" and defined "occupying" as "in, upon, getting in, on, out or off" the covered vehicle. Id. at 67, 928 A.2d 96. Citing Mondelli, De Almeida, Torres and Macchi, we stated:
We see no basis in prior decisions for denying uninsured motorist coverage in this case. [Plaintiff] was a passenger in the dump truck because he was directing its driver to his destination. He left the passenger seat and entered the roadway in order to assist the driver in making a turn. He was out of the truck for a matter of seconds when he was *1096 struck and injured. Under these facts, the trial court properly concluded that [plaintiff] was occupying the vehicle and entitled to uninsured motorist coverage[.]
[Id. at 68-69, 928 A.2d 96.]
Unlike the governing cases, here plaintiff has failed to meet his burden of establishing a "substantial nexus" between his use of the car and the injuries he eventually sustained. Plaintiff was not leaning on or touching the car when he was struck, Mondelli, supra, 102 N.J. at 172-73, 506 A.2d 728; he was not stepping on and off the car, De Almeida, supra, 314 N.J.Super. at 317, 714 A.2d 967; he was not walking towards or in near physical proximity to the car, Torres, supra, 171 N.J. at 148, 793 A.2d 592; he did not leave the car in an attempt to provide emergency assistance at the nearby scene of an accident, Macchi, supra, 354 N.J.Super. at 68, 804 A.2d 596; nor did he exit the car in which he was a passenger to assist the driver to his or her destination, Bogey's Trucking & Paving, Inc., supra, 395 N.J.Super. at 68-69, 928 A.2d 96.
On the contrary, plaintiff's use of the covered vehicle to arrive at the Exxon station was merely coincidental, as he could easily have arrived there through other means. Even more so, his use of the covered vehicle was incidental to the accident, as he did not drive the car to the scene of the accident, but instead left it parked at the gas station some 350 feet away. Simply put, there was nothing about plaintiff having "occupied" the covered vehicle that was directly, much less substantially, related to the incident in which he was injured. And on this score, the Court has cautioned against extending the definition of "occupying" to injuries that are "`[m]ere[ly] coincidental'" to the use of a covered vehicle. Torres, supra, 171 N.J. at 149, 793 A.2d 592 (quoting Mondelli, supra, 102 N.J. at 172, 506 A.2d 728).
Moreover, plaintiff has failed to show his departure from the vehicle was only momentary or temporary. Indeed, he does not even recall his purpose for walking to the grassy median or how long he was out of the car before he was struck. The record suggests, however, the departure was not so brief for him to be considered to have occupied the car continuously. After all, plaintiff essentially relinquished control of the vehicle to the gas station attendant, proceeded to cross four lanes of traffic, climb over a guardrail, and descend to the grassy median, where he could have remained anywhere from ten to fifty minutes before being hit by James' car, conducting activity most likely unrelated to the purpose of the original stop. Such actions on the part of plaintiff, in our view, are sufficiently independent of his use of the car so as to negate any nexus between such use and his ultimate injury.
Plaintiff nevertheless argues that the dispositive consideration was his intent to eventually return to the covered vehicle. We disagree. None of the governing cases support such a broad test of "occupying" without reference to temporal duration, distance or reason for exiting the vehicle. Indeed, when these other factors are taken into consideration, along with the particular circumstances of this matter, we are led to the conclusion that plaintiff's injuries are "merely coincidental" to his use of the vehicle, that there is no substantial nexus between the two, and that, therefore, plaintiff has failed to satisfy the policy's definition of "occupying" as is required for coverage.
Reversed.
NOTES
[1] Defendant contends that it was improperly pleaded as CNA Insurance Company, claiming that its proper corporate name is Continental Casualty Company.
[2] Plaintiff posited three possible reasons: to look for the missing jewelry; to look for a "beauty ring" that was missing from his car's tire rim; or, to survey the area for a work-related project with the New Jersey Department of Transportation. However, plaintiff's employer was not doing business with the Turnpike Authority, and plaintiff had no permission to be on the grassy median.
[3] Plaintiff also asserted a negligence claim against James, and a claim against his employer, seeking to hold it jointly and severally liable with CNA for all personal injury protection (PIP) benefits and all uninsured and underinsured motorist payments. The claims against James and plaintiff's employer were eventually dismissed.